539 A.2d 463

Patricia Gallagher, Appellant *v.* Upper Darby Township et al., Appellees. (4 cases)

464

Argued December 14, 1987, before Judges MAC-
PHAIL and DOYLE, and Senior Judge BARBIERI, sitting as
a panel of three.

*Ronald Ervais,* for appellant.

*Jeffrey P. Lewis, Gibbons, Buckley, Smith, Palmer & Proud, P.C.,* with him, *Paul Bartolacci, Holstein & White,* for appellee, Upper Darby Township.

*George J. McConchie,* for appellee, A.B.C. Sewer Cleaning Company.

*John Salvucci,* for appellee, General Sewer Cleaning Company.

*Kevin M. Livesey,* for appellee, Vic Snyder.

Opinion by Judge MacPhail, March 17, 1988:

Patricia Gallagher (Appellant) appeals from orders of the Court of Common Pleas of Delaware County granting summary judgment to Upper Darby Township (Township), General Sewer Service, Inc. (General Sewer) and A. B. C. Sewer Cleaning Company (ABC), and partial summary judgment to Vic Snyder (Snyder) in civil actions instituted by Appellant against those parties.[1]

In 1984, Appellant sued Township alleging that its negligence in maintaining its sewer line caused the sewer system to back up onto her property and into her house causing her property damage, emotional distress, loss of earnings, impairment of earning power and out of pocket expenses. Township joined General Sewer, ABC, DeMarco Plumbing Contractors, Inc. (DeMarco) and Snyder as additional defendants in that action which we will identify hereinafter as the 1984 action.

In 1985, Appellant brought another suit against the same defendants, this time suing the Township in trespass and the other defendants in trespass and assumpsit. Hereinafter we will refer to this suit as the 1985 action.

The cases were consolidated for trial by the trial court. After answers were filed and depositions taken, Township, General Sewer, Snyder and ABC filed motions for summary judgment which the trial court granted as noted above.

Appellant's causes of action are based upon the following facts alleged in her complaints. Since 1978,

---

[1] It appears that Appellant filed appeals from the trial court's orders with the Superior Court of Pennsylvania and then requested transfer of those appeals to this Court. That request was granted. Appellant also filed appeals from the same trial court orders with this Court. By prior order we consolidated all of the appeals for disposition.

Appellant has had sewage problems in the nature of an overflow from the sewer vent on her property. When Township officials threatened to cite her and fine her for this condition, she employed successively General Sewer, Snyder, ABC and DeMarco in an attempt to alleviate the problem. According to her complaints, none of the efforts of these plumbers was successful. A fifth plumber was employed in 1983 who diagnosed the problem as a blockage of the *Township's* sewer main adjoining the lateral sewer line outside Appellant's home. It appears that the Township made the necessary replacement of that main pipe and the problem is now resolved.

During the five years between 1978 and 1983, Appellant avers that she was arrested, incarcerated and fined for violating Township ordinances, went through a foreclosure proceeding as a result of a financing dispute with ABC, paid substantial sums of money to the various plumbers she employed and finally was hospitalized for treatment of acute paranoid schizophrenia. She seeks compensatory and punitive damages from all defendants.

Summary judgment may be entered only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa. R.C.P. No. 1035(b). Appellant contends that the trial court erred as a matter of law in granting summary judgments here because there are genuine issues of fact to be resolved.

Since judgment in each case was entered for somewhat different reasons, we will discuss each cause of action separately.

### APPELLANT V. TOWNSHIP

Township's answers raised the defense of governmental immunity under 42 Pa. C. S. §8541. Appellant

argues that her action falls within the exception found in 42 Pa. C. S. §8542(b)(5). The trial court concluded that the Township was immune from suit.

Section 8542(b)(5) states:

> The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> . . . .
>
> (5) *Utility service facilities.* A dangerous condition of the facilities of steam, sewer, water, gas or electric systems owned by the local agency and located within rights-of-way, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

The trial court held that even giving Appellant the benefit of the doubt and assuming the condition here at issue to be dangerous, Appellant's mental and emotional problems, her loss of earnings and impairment of earning power were not the kinds of injury which would be reasonably foreseeable from the alleged dangerous condition. The trial court further held that Appellant had failed to establish that the Township had actual notice or could reasonably be charged with notice that its own main was the cause of the sewage backup.

The Township's director of public health stated that the cause of the overflow was the blockage in Township's main and not the sewer line from Appellant's dwelling to the Township main. While we may agree with the trial court that in ordinary circumstances, the injuries

allegedly sustained by Appellant here would be too remote to be a foreseeable risk, we believe that the circumstances alleged by the Appellant are so unique that a jury or other factfinder should make a determination of that issue. We see some similarity between the facts of this case and those presented to the Superior Court in *Little v. York County Earned Income Tax Bureau*, 333 Pa. Superior Ct. 8, 481 A.2d 1194 (1984), *appeal dismissed*, 510 Pa. 531, 510 A.2d 351 (1986). There, the plaintiff in a civil suit brought an action against the York County Tax Claim Bureau for damages for emotional distress resulting from imprisonment for five days due to her reliance on the negligent representations made by the Tax Claim Bureau. The court, relying on Restatement (Second) of Torts §950(b) (1979) which permits compensatory damages for non-pecuniary harm including mental distress, held that the matter of damages for emotional distress under those unusual circumstances was for the jury. We believe that the same logic and law should apply here.

With regard to notice, it appears from the deposition of the Township engineer that the Township had "cleaned" the sewer lines belonging to the Township six or seven times between 1978 and 1983 and, finally, on June 13, 1983, dug up the street, discovered the blockage and repaired it by removing three sections of pipe and replacing them. Again, we are of the opinion that whether or not the Township knew. *or should have known* that the blockage in its own main was causing Appellant's problem is a factual issue to be resolved by a jury.

Finally, we believe that it is for a factfinder to determine whether the Township, under these circumstances, was negligent in fact and whether the blockage was a "dangerous condition" within the meaning of Section 8542(b)(5).

We conclude that the trial court erred in granting summary judgment in favor of the Township.

## APPELLANT V. GENERAL SEWER

In her complaint, Appellant states that "at a date prior to October 30, 1978," she contracted with General Sewer to remedy her sewage problem and that General Sewer breached that contract when it failed to locate the source of the problem and failed to perform its work in a proper and workmanlike manner. In a count in trespass, Appellant alleges that General Sewer was negligent in failing to make the necessary repairs.

In new matter, General Sewer pled the bar of the statute of limitations. The trial court held that whether the two-year or four-year statute of limitations applied, *see* 42 Pa. C. S. §5524 and 42 Pa. C. S. §5525, Appellant's action was clearly barred.

Appellant concedes that as a general rule a statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Pocono International Raceway v. Pocono Produce,* 503 Pa. 80, 468 A.2d 468 (1983). Appellant argues, however, that the so-called "discovery" exception applies in this case. In *Pocono,* our Supreme Court held that the discovery rule "arises from the inability of the injured, *despite the exercise of due diligence,* to know of the injury or its cause." *Id.* at 85, 468 A.2d at 471 (emphasis in original). In the instant case, it is quite apparent that Appellant knew that General Sewer had not solved her problem as evidenced by her employment of other plumbers to remedy the situation, and particularly her deposition testimony that Snyder was contracted in 1978 to do the same work which General Sewer had previously done, because the sewer problem worsened.

We will affirm the trial court's entry of judgment in favor of General Sewer and against Appellant because those causes of action are time-barred.

APPELLANT V. VIC SNYDER

Appellant's complaint states that on or about October 20, 1978 and January 20, 1979, she hired Snyder to locate and solve the problem of her sewer backup and that he breached the contract by failing to correct the problem. In a count in trespass, Appellant avers that Snyder was negligent in the performance of his work and that he failed to correct Appellant's sewage problem.

Snyder also pled the bar of the statute of limitations in new matter set forth in his answer to Appellant's complaint. The trial court held that the trespass actions were barred by the two-year statute of limitations but that the six-year statute of limitations did not bar the 1984 assumpsit action. The trial court's conclusion in this regard was based upon the fact that Appellant employed ABC on February 26, 1979 to do the same work Snyder was previously employed to perform. The trial court said that on that date, employing the discovery rule, Appellant's cause of action accrued.

It appears that the 1984 complaint was filed March 22, 1984 and the complaint to join additional defendants was filed June 4, 1984. The 1985 action was commenced by writ of summons filed April 9, 1985. The complaint in that action was filed April 26, 1985. Although neither complaint specifically states that the contract between Appellant and Snyder was in writing and although neither complaint has attached to it a copy of the contract as required by Pa. R.C.P. No. 1019(h), the trial court states that both the 1978 and 1979 contracts were in writing and Snyder nowhere contests that statement.

Assuming that both contracts were in writing, we agree with the trial court that February 26, 1979 is the date when the applicable statute of limitations begins to

run since that is when Appellant, by the exercise of due diligence, should have known of her injury by reason of her engaging another plumber. *Pocono.*

We further agree with the trial court that the 1985 action was time barred in its entirety and that the trespass part of the 1984 action is likewise time barred.

Regarding the assumpsit count in the 1984 action, the trial court held that Appellant's claim for damages for emotional distress must be dismissed, citing *Rodgers v. Nationwide Mutual Insurance Co.*, 344 Pa. Superior Ct. 311, 496 A.2d 811 (1985). In a thorough discussion of the right to recover damages for emotional distress in Pennsylvania, the Superior Court held in *Rodgers* that unless the breach of contract was wanton or reckless and caused bodily harm or the breach is of such a nature that serious emotional disturbance was a *particularly* likely result, there could be no recovery for mental suffering or emotional distress. *See* Restatement (Second) of Contracts §353 (1981). We must agree with the trial court that inasmuch as no physical injury is alleged by Appellant and the failure to correctly diagnose a sewage blockage problem is not *particularly* likely to result in mental suffering or emotional distress, Appellant cannot, as a matter of law, recover damages from Snyder for those injuries.

### Appellant v. ABC

On February 26, 1979, Appellant entered into a written contract with ABC to "excavate street from curb to sewer and install a 5″ extra heavy soil pipe to sewer" for the sum of $2700, of which $1,000.00 was to be paid immediately and the balance to be financed. It appears that in order to finance the balance, Appellant executed a mortgage to ABC, offering her home as collateral. The complaint alleges that ABC executed on a judgment

note from Appellant resulting in Appellant's loss of her home and her repurchase of the same for $6,000.00.

Appellant claims that ABC breached its contract to locate the source of her sewer problem and negligently performed its work resulting in injury to Appellant. In addition, Appellant alleges that ABC's "actions" constituted fraud, trickery and deceit.

In addition, Appellant claims that ABC performed additional services related to her sewer problem in 1982 and that these services also were unsatisfactory.

In granting ABC's motion for summary judgment, the trial court held that Appellant could not vary the terms of the written contract by parol evidence which Appellant claims would show that in fact ABC was engaged to solve her sewer problem. The trial court also held that any claim Appellant might have against ABC arising out of the financing and loss of her home was barred by collateral estoppel and further, that the 1982 work performed by ABC was as a sub-contractor for DeMarco, which work was satisfactorily performed.

It is true, of course, that as a general rule, parol evidence cannot be admitted to vary the terms of a written contract. *Peter J. Mascaro Co. v. Milonas*, 401 Pa. 632, 166 A.2d 15 (1960). There are exceptions to that rule, however, even where the terms of the contract are not ambiguous. Thus, where an obligation was within the contemplation of the parties when making the contract or is necessary to carry out their intention, the law will imply that obligation and enforce it even though it is not specifically and expressly set forth in the written contract. 17 Am. Jur. 2d *Contracts* §255 (1964). *See also* Restatement (Second) of Contracts §204 (1981) and 8 P.L.E. Contracts §164 (1971).

What was the intention of the parties when this contract was made? We think that there is a factual dispute regarding the answer to that critical question. Appellant

says her intention was that ABC would fix her sewer problem; ABC contends they simply were to replace a pipe. A jury could very well infer that the express terms of the contract were designed to fix Appellant's sewer problem. In any event, we believe this is a factual issue to be resolved by the factfinder.

We have reviewed the order of court which set aside the sheriff's sale of Appellant's home, ended the ejectment action brought by ABC against Appellant and satisfied Appellant's mortgage to ABC upon payment of the sum of $6,000.00 from Appellant to ABC. That order simply restores Appellant's home to her and the right to occupy the same. While collateral estoppel may prevent Appellant from relitigating the sheriff's sale, ejectment action and mortgage foreclosure proceedings, we fail to see how allegations of fraud, deceit and trickery with respect to the underlying contract executed by the parties would be precluded by the consent order. No mention whatsoever is made in that order of that contract. Nothing in the order precludes either party from exercising any rights one may have against the other. As we have noted, the fraud, trickery and deceit averred by Appellant is not directed specifically to the financing of the contract, but rather to ABC's "actions" which may include matters apart from the financing.

Concerning ABC's 1982 activities, the trial court relied on the uncontradicted deposition testimony of ABC's principal officer that his company satisfactorily cleaned a lateral line in performing as a sub-contractor for DeMarco. Appellant alleges, however, that her sewer problem was not resolved by DeMarco's efforts. Whether that was due to ABC's faulty cleaning of the lateral and whether DeMarco had contracted to resolve the sewer problem, are factual issues which must be submitted to a factfinder. As the trial court notes, Appellant is a third party beneficiary of DeMarco's sub-

contract with ABC, and, therefore, has the right to sue ABC in that capacity.

In summary, we will reverse the order of the trial court which entered summary judgment against Appellant and in favor of ABC.

## ORDER

The order of the Court of Common Pleas of Delaware County dated November 3, 1986 granting summary judgment to the Township of Upper Darby, is reversed.

The order of said court dated November 7, 1986, granting summary judgment to General Sewer Service, Inc., is affirmed.

The order of said court dated November 24, 1986 granting summary judgment to Vic Snyder in civil action No. 85-3605 and partial summary judgment to Vic Snyder in civil action No. 84-3291, is affirmed.

The order of the said court entered December 3, 1986, granting summary judgment to ABC Sewer Cleaning Co., is reversed.

This case is remanded to the trial court for further proceedings.

Jurisdiction is relinquished.