**Walker v. Cunkelman**

*William Kriner* and *Alan F. Kirk,* for plaintiffs.
*Timothy Durant,* for defendants.

KURTZ, *J.,* October 26, 1993—This declaratory judgment action[1] was tried to the court on September 8, 1993. The following findings of fact are, we believe, not in serious dispute.

## FINDINGS OF FACT

(1) On July 22, 1986, George T. Cunkelman Jr., and Do Kim Cunkelman, his wife, entered into an option and lease agreement with Glendale Contracting Company for the surface mining rights for property owned by the Cunkelmans in Chest Township, Clearfield County, Pennsylvania.

(2) On September 9, 1986, Glendale paid to the Cunkelmans the $1,500 required under the agreement as a non-recoverable royalty payment. In addition, the Cunkelmans were paid the $200 fee set forth in paragraph 15 of the agreement.

(3) On September 12, 1986, Glendale assigned the agreement to Shannon Land and Mining Company. Shannon paid Glendale $15,000.

(4) The reason for the assignment was the discovery by Glendale that Bradford Coal Co. Inc. owned the underlying coal reserves.

---

1. Declaratory Judgments Act, 42 Pa.C.S. §7531 et seq.

(5) Since September of 1986 to date Shannon has paid to the Cunkelmans the monthly recoverable royalty of $100 as provided for in paragraph 15 of the agreement.

(6) In the fall of 1991, Shannon entered into agreement with Bradford and Al Hamilton Contracting Company the substance of which was that Hamilton would seek a permit from the Pennsylvania Department of Environmental Resources to mine the coal under the Cunkelman's property as well as two adjacent properties.

(7) The delay in seeking a permit was occasioned because the surface rights to mine one of the adjacent properties were not acquired until 1991.

(8) The actual mining of the coal was to be done by Hamilton.

(9) DER regulations mandate that an applicant (Hamilton) have the written consent of the owner of the property for the extraction of coal by surface mining methods. 25 Pa. Code 86.64, adopted December 19, 1980, 10 Pa.B. 4789, eff. July 31, 1982, 12 Pa.B. 2382; as amended.

(10) Thus, Hamilton needed the written consent of the Cunkelmans in order to obtain a mining permit from DER.

(11) To this end, Shannon wrote to the Cunkelmans on November 15, 1991, and enclosed a "Supplemental C" which is DER's contractual consent for the landowner.

(12) In their agreement with Glendale, the Cunkelmans not only agreed to execute a "Supplemental C" for Glendale, they, in fact, executed the document contemporaneous with their execution of the option/lease.

(13) In January 1992, Mr. Cunkelman contracted Shannon and made inquiry about the relationship of Bradford, Shannon and Hamilton.

(14) Shannon responded to that inquiry by letter dated January 14, 1992, in which it was explained that Shannon was the landholding arm of Bradford, and that Mr. C. Alan Walker, the owner of Bradford was also the Chief Executive Officer of Hamilton.

(15) The Cunkelmans refused to execute the "Supplemental C" in favor of Hamilton, and as a result the permit application was withdrawn since withdrawal allows for resubmission whereas denial forecloses reapplication.

## DISCUSSION

The issue is whether the Cunkelmans are obligated under the terms of the option and lease agreement to execute a "Supplemental C" in favor of Hamilton. We believe that they are.

Initially, we address an issue raised for the first time in defendants' brief filed after the trial of this cause and that is the propriety of a declaratory judgment action to resolve the dispute. In 1989, the Superior Court in a case arising from this court addressed the same challenge. Judge Joseph A. Del Sole for a unanimous panel of the Superior Court affirmed a decree of President Judge John K. Reilly in a strip mining case that was similar in terms of the relief sought to this case. The opinion of Judge Del Sole in *Clearfield Bank & Trust Co. v. Shaffer,* 381 Pa. Super. 259, 553 A.2d 455 (1989), approved the Declaratory Judgment Act as a proper vehicle to define the rights and obligations of the parties to a deed. Although the instrument is different in this case, the opinion of the court pronounces the procedure followed as appropriate to resolve this type of dispute. As an aside, we question whether raising the issue post-trial is the proper means for defendants to inject this issue into this litigation.

Turning to the subject matter of this case, the Superior Court has enunciated the principles we believe resolve this dispute. In *Slater v. Pearle Vision Center Inc., supra,* an equity action was initiated to compel defendant Pearle to occupy and use leased premises even though Pearle had paid the rent on the property and complied in all other respects with the terms of the lease. Plaintiff, the owner of the property which was a shopping center, argued that a vacant store damaged business in the shopping plaza. Pearle argued that since it had paid its rent and done all other acts required under the lease, it could not be forced to do more than the lease provided. The lease was silent on the question of occupancy and use.

Judge Phyllis W. Beck for a unanimous panel of the Superior Court in *Slater, supra,* reversed the decision of Judge Jay Myers of Columbia County who had sustained preliminary objections to the equity complaint. Judge Beck, in her opinion, explained and applied to these facts the doctrine of necessary implication, a judicially invented principle that has obvious application to the facts of this case. She opined:

"As our Supreme Court has recently reiterated, 'a lease is in the nature of a contract, and is controlled by principles of contract law.' *Cimina v. Bronich,* 517 Pa. 378, 383, 537 A.2d 1355, 1357 (1988). One such principle of contract law applicable to this case is sometimes called the doctrine of necessary implication, which has been described as follows:

"In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain

from doing anything that would destroy or injure the other party's right to receive the fruits of the contract.

*"Frickert v. Deiter Bros. Fuel Co. Inc.,* 464 Pa. 596, 347 A.2d 701 (1975) (Pomeroy, J., concurring) (quoting *D.B. Van Campen Corp. v. Building and Construction Trades Council of Philadelphia,* 202 Pa. Super. 118, 122, 195 A.2d 134, 136 (1963)). Thus, where it is clear that an obligation is within the contemplation of the parties at the time of contracting or is necessary to carry out their intentions, the court will imply it. *Gallagher v. Upper Darby Township,* 114 Pa. Commw. 463, 539 A.2d 463, 467 (1988).... Since the doctrine of necessary implication serves not to instruct the court as to which of two possible interpretations of a contract should be adopted, but rather to allow the court to enforce the clear intentions of the parties and avoid injustice, the court does not need to find an ambiguity before it will employ the doctrine." *Id.* at 586-87, 546 A.2d at 679.

The language quoted above from our Supreme Court to the effect that, "... the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made ..." is compelling and points unequivocably to the proper result in this case. *Id.* at 586, 546 A.2d at 679.

First, there is no argument but that the purpose of this agreement and, therefore, the intent of the parties was that the Cunkelman property be mined.

Second, the agreement specifically and expressly mandates execution of a "Schedule C" by the Cunkelmans.

Third, the execution of this document is a legal necessity for the accomplishment of the objective of the agreement.

Fourth, the Cunkelmans have accepted the consideration provided for by the contract from the assignee of the lessees, a fact that we believe estops them from now questioning the underlying agreement, a path pursued at trial.

Accordingly, we will by order and direct that Mr. and Mrs. Cunkelman cooperate with the plaintiffs in the procurement of a mining permit and to that end, execute the form provided by DER.

### ORDER

And now, October 26, 1993, in accordance with the views expressed by this court in an opinion filed this date, it is the order of this court that:

(1) Defendants have a duty and obligation under the option and lease agreement dated July 22, 1986 to execute a "Supplemental C" in favor of Al Hamilton Contracting Company, or any entity designated by Shannon Land and Mining Company to mine their property.

(2) Plaintiffs' request for counsel fees and costs is denied.