J-A22002-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| TRECIA & CHARLES SULLIVAN, | IN THE SUPERIOR COURT OF |
|---|---|
| Appellants | PENNSYLVANIA |
| v. | |
| DR. STEVEN HAYWOOD AND DR. HAYWOOD AND ASSOCIATES | |
| Appellees | No. 2043 MDA 2013 |

Appeal from the Order Entered October 23, 2013
In the Court of Common Pleas of York County
Civil Division at No. 2010-SU-004686-82

BEFORE:  PANELLA, J., and SHOGAN, J., and FITZGERALD, J.*

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 16, 2015**

Appellants, Trecia Sullivan and Charles Sullivan,[1] seek review of the orders granting summary judgment in favor of Appellees Dr. Steven Haywood. D.D.S., and Dr. Haywood & Associates.[2]  We affirm.

On November 14, 2006, Appellant consulted with Appellee, an expert in the field of restorative and cosmetic dentistry.  Appellee conducted a full dental exam, including complete x-rays, noting multiple missing teeth, bone loss, and evidence of periodontal disease before extracting a tooth due to

---

* Former Justice specially assigned to Superior Court.

[1] Mr. Sullivan's claim is for a loss of consortium.  Reference within this opinion to the singular "Appellant" is to Mrs. Sullivan, unless otherwise indicated.

[2] Reference within this opinion to the singular "Appellee" is to Dr. Haywood.

infection. Appellee recommended that Appellant have work done on her upper and lower jaws on both sides of her mouth, and provided her with a computer-generated "after" picture of what she would look like if she were to have all of the recommended work done. Appellant instead opted for a limited treatment plan to repair and reconstruct her front teeth and upper right quadrant only. Appellee provided Appellant with a list of the procedures she desired, delineating the cost of each procedure and indicating the total cost would be $19,940.00.[3]

On January 2, 2007, Appellee performed the first of several restorative procedures, including building up four teeth, inserting a temporary bridge, and placing veneers on five other teeth. On January 9, 2007, Appellee performed a sinus lift and associated bone graft, and inserted two dental implants in the upper right quadrant of Appellant's mouth. Within a few days of that procedure, Appellant began experiencing problems, including seepage of particles and fluid from the site of the one of the implants and the bone graft, and loose sutures. She blamed Appellee then for having done "bad work." Notes of Testimony Deposition, 9/28/12, at 389, RR 144a.

---

[3] Appellants paid Appellees in installments, as follows: $10,000.00 on 1/2/07; $6,000.00 on 1/9/07; $1,500.00 on 3/16/07; $500.00 on 6/29/07; and $400.00 on 10/5/07. On 10/8/08, Appellant gave Appellee a personal check for $1,800.00, but then stopped payment on the check. In addition to the fees for work done, Appellant was billed for missing at least four appointments. **See** Notes of Testimony Deposition, dated 5/2/12 at 34-38, RR517a-521a.

On January 19, 2007, Appellee re-sutured the site of the seeping implant. Appellant thereafter suffered toothaches in February and March 2007, and had difficulty eating. She returned to Appellee for routine dental follow-up and cleanings between March 2007 and December 2007.

On December 17, 2007, Appellee performed crown work on Appellant's front teeth and bridge work as part of the limited treatment plan. He also removed the dental implant that had been re-sutured on January 19 because it had not integrated into her bone. The next day, Appellant complained to her husband that the crowns and bridges were too big for her mouth, her new front teeth were on a slant, and her pre-existing left bridge had a cracked tooth and no longer fit properly. Because of her unhappiness with her teeth, Mrs. Sullivan refused to go out and, according to Mr. Sullivan, the marital relationship suffered. In early February 2008, Appellant's bridges no longer fit properly and the teeth in them started falling out regularly. Appellant would use Polygrip and/or Super Glue to put them back in her mouth. She complained to Appellee about the appearance of her teeth and, noting that Appellant's jaw was structurally on a slant, Appellee filed the teeth down as best he could to accommodate her concerns without compromising the strength of the teeth.

On May 19, 2008, Appellee installed a new implant next to the site of the previously failed implant. Appellee informed Mr. Sullivan on that day that Appellants had a balance due of $1,800.00. In September 2008, Appellant gave Appellee a check for $1,800.00, but cancelled payment soon

thereafter. On October 8, 2008, when Appellant returned to Appellee's office to have sutures removed, Appellee refused to continue treatment until Appellants paid him the $1,800.00 balance due on their account. Appellants refused to pay and never returned to Appellee's office.

On September 2, 2010, Appellants filed a writ of summons alleging dental malpractice against Appellees. On February 1, 2011, Appellants filed a complaint, which they amended on May 24, 2011, alleging negligence, breach of contract, and loss of consortium.[4] A certificate of merit was filed on April 4, 2011. After the denial of preliminary objections, Appellees filed an answer and new matter on October 5, 2011. Extensive discovery ensued.

On April 15, 2013, Appellees filed a motion for partial summary judgment on the negligence and loss of consortium claims. After oral argument, the trial court granted the motion with prejudice, finding that Appellants had not commenced their action within the 2-year statute of limitations period applicable to claims of negligence and loss of consortium. The court observed that, at the earliest, Appellant knew that she had been injured by Appellee's actions on or about January 9, 2007. The court found that, at the latest, the statute of limitations started running in May 2008 when Appellant received her replacement implant from Appellee. *See* Trial Court Opinion, dated July 18, 2013. The court also observed that Mr.

---

[4] Appellants also alleged Mrs. Sullivan, a life-long smoker, had acquired cancer from the bone graft. That claim was subsequently withdrawn by stipulation.

- 4 -

Sullivan had testified that he noticed the marriage had been harmed after the December 2007 procedure.

On June 18, 2013, while the above-referenced summary judgment motion was pending, Appellees filed a second motion for partial summary judgment seeking the dismissal of the breach of contract claim. The trial court granted the motion with prejudice, observing that Appellants had not produced a written agreement and discovery had not revealed sufficient evidence of an express agreement or any special facts or circumstances that would otherwise support their breach of contract claim. After the denial of their motion for reconsideration and new hearing, Appellants timely appealed to this Court. They raise the following six issues for our review, reordered for ease of disposition:

A. Whether the [t]rial [c]ourt erred in finding that Appellant Trecia Sullivan should have known that she was injured by the Appellees and, thereby, beginning to run the statute of limitations on or about May 2008, when Appellants were only aware malpractice existed when Appellees failed to remove Appellant Trecia Sullivan's sutures on or about October 2008.

B. Whether the [t]rial [c]ourt erred in finding Appellant's [*sic*] consulted with another dentist during their treatment, who then allegedly confirmed the malpractice of the Appellees, thereby, effectively notifying the Appellants of the Appellees malpractice due to the fact Appellant Trecia Sullivan was seen by no other dentist while under the care of Appellees as supported by both the facts and record of this case.

C. Whether the [t]rial [c]ourt erred in finding that Appellees did not engage in fraudulent concealment of negligence (medical malpractice), when Appellees failed to make a referral to another doctor (e.g. periodontist) as warranted by the facts and instead Appellees held themselves out as top of the field in dental implants.

- 5 -

D. Whether the [t]rial [c]ourt erred in finding that Appellees did not promise a specific result in dental implant work for a set fee (as evidenced by a picture produced by Appellees and memorandum outlining material terms of contract),which was an enforceable verbal or express contract.

E. Whether the [t]rial [c]ourt erred in finding that Appellees could not be negligent for medical malpractice and for breach of contract for failing to produce promised results in cosmetic dentistry for fixed fee in the same lawsuit, alleging that the claim was instead redundant.

F. Whether the [t]rial [c]ourt erred in finding that a contract action could not stand because no separate, special contract action was developed through discovery, and therefore concluding that the gravamen of the action was in medical malpractice, thereby, precluding a contract claim.

Appellants' Brief at vii-viii.

The standards that govern summary judgment dispositions are well settled.

When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566–67 (Pa. 2005) (citations omitted). *See also* Pa.R.C.P. 1035.2.

The first three issues pertain to the trial court's grant of Appellees' partial summary judgment motion based on Appellants' failure to file their negligence and loss of consortium claims within the applicable statute of limitations period. Appellants aver that it was not until Appellee refused to remove Appellant's stitches on October 8, 2008 that they became "aware of negligence of Appellees [*sic*]." Appellants' Brief at 6. They also aver that even if the statute of limitations period started earlier, it was tolled as a result of fraudulent concealment because Appellees "held themselves out as top or best in their field, and Appellants were thus "prevent[ed] … from becoming aware earlier of medical malpractice." ***Id***.

Pursuant to 42 Pa.C.S. § 5524, the statute of limitations applicable to negligence and loss of consortium claims is two years from the date of the injury. Once the statute of limitations has run, the injured party is barred from suing. Pennsylvania courts have not adopted a "continuous treatment" rule in cases involving medical or dental malpractice, which would toll the statute of limitations until the end of the medical treatment period. ***See Haggart v. Cho***, 703 A.2d 522, 526 (Pa. Super. 1997). Our courts have adopted, however, other tolling mechanisms relied upon by Appellants here, *i.e.*, the discovery rule and fraudulent concealment. Neither is applicable here.

The discovery rule tolls the statute of limitations in any case where a party neither knows nor reasonably should have known of his or her injury

and its cause at the time his or her right to institute suit arises. *See Fine v Checcio*, 870 A.2d 850, 858 (Pa. 2005).

> When a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. *Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.*

*Id*. at 858-59 (internal quotations marks and citations omitted) (emphasis added).

Here, the trial court observed that there are three distinct dates when Appellant knew she had been harmed, all of which were well-before the October 2008 date claimed by Appellants. "At the very earliest," the court noted, Appellant knew on or about January 9, 2007, that she had been injured by Appellee's actions after the site of the implant, the sinus lift, and the associated bone grafts seeped particles and blood through loose stitches. Trial Court Opinion, dated 7/18/13, at 7. The second date noted by the court was December 17, 2007, when Appellant believed immediately after the procedure on her front teeth that she had been harmed because her teeth appeared to be slanted. The court noted that it was also after the December 17, 2007 procedure that Appellant's husband believed that the marital relationship suffered as a result of Appellee's actions. **See** Notes of

Testimony Deposition, 9/28/12, at 126, RR.158a. The third date noted by the court was May 19, 2008, the day Appellant received the new implant to compensate for the failed implant that Appellee had originally inserted in January 2007. The court noted that after each of those procedures, Appellants blamed Appellee for having done poor quality work.

Our extensive review of the record supports the trial court's conclusion that the statute of limitations for Appellants' negligence and loss of consortium claims began to run on January 9, 2007, at the earliest, and May 19, 2008, at the latest. These are both dates on which "reasonable minds would not differ in finding that" Appellants knew of their injuries and the cause of those injuries. **See Fine**, **supra** at 859. Accordingly, the discovery rule is not applicable as a matter of law. Pursuant to 42 Pa.C.S. § 5524, Appellants should have commenced their action no later than May 19, 2010, over three months prior to their September 2, 2010 filing date.

Appellants also aver that the statute of limitations had been tolled until October 2008 under principles of fraudulent concealment because Appellees had improperly held themselves out to the public as experts in their field and had failed to make a referral to another doctor who could perform dental implants or conduct periodontal work. **See** Appellants' Brief at 8-9.[5]

---

[5] Appellants do not assert that they asked for a referral and that Appellee refused to give them one.

The doctrine of fraudulent concealment serves to toll the running of the statute of limitations based on a theory of estoppel. It provides that:

> the defendant may not invoke the statute of limitations if through fraud or concealment, [the defendant] causes the plaintiff to relax his [or her] vigilance or deviate from his [or her] right of inquiry into the facts. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence.

*Fine*, *supra*, at 860.

"[T]he defendant must have committed some affirmative independent act of concealment upon which the plaintiffs *justifiably* relied. Mere mistake or misunderstanding is insufficient. Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." *McClean v. Djerassi*, 84 A.3d 1067, 1070 (Pa. Super. 2013) (citation omitted) (emphasis added).

Appellants essentially argue that because Appellee marketed himself as top in the field of restorative dentistry and did not refer Appellant to any other specialists, Appellants were limited in their ability to seek second opinions or otherwise ask for outside advice when they became unhappy with Appellee's work. Based on our review of the record, we agree with the trial court that Appellants provided no evidence to support a finding that Appellee through fraud or concealment caused them "to relax [their] vigilance or deviate from [their] right of inquiry into the facts." *Fine*, *supra*, at 860. Because there is no evidence of fraudulent concealment and

the discovery rule is not applicable as a matter of law, we conclude that the trial court did not abuse its discretion or err in granting Appellees' motion for partial summary judgment on Appellants' negligence and loss of consortium claims.

The last three issues set forth above challenge the trial court's grant of Appellees' motion for partial summary judgment on the breach of contract claim. Appellants aver that the parties entered into a verbal contract and Appellee breached that contract by not providing the result promised in the "after" photograph. *See* Appellants' Brief at 10-11 (citing ***Gallagher v. Upper Darby Township***, 539 A.2d 463 (Pa. Cmwlth. 1988)).[6]

Appellants original complaint contained no breach of contract claim. In their amended complaint, Appellants included the following breach of contract claim, set forth in its entirety:

> ¶ 41. Defendants entered into an express contract with Plaintiffs when they authorized Defendants to perform tooth implants and cosmetic surgery. An implied term of that contract was that Defendants and its agents would act with due care and would meet the standard of care expected in the medical profession and would meet the standard of care expected of an ordinary

---

[6] In ***Gallagher***, the Commonwealth Court observed that even where there is an unambiguous written contract, parol evidence can admitted to show that "an obligation was within the contemplation of the parties when making the contract or is necessary to carry out their intention," and "the law will imply that obligation and enforce it even though it is not specifically and expressly set forth in the written contract." *Id*. at 467. ***Gallagher*** provides no support for Appellants' breach of contract claim under the facts presented.

and reasonable person under the circumstances with respect to all aspects of the procedure.

¶42. Defendants and Defendants' actual agents, ostensible agents, joint agents, servants and/or employees have breached that contract by failing to provide good and competent care for Decedent [*sic*], failing to follow negotiated fee schedule [*sic*], and failing to provide adequate training to its agents and employees, all as expected in the medical profession as well as in a non-medical situation.

¶43. Further, Defendants and Defendants' actual agents, ostensible agents, joint agents, servants and/or employees have breached that contract by failing to abide by the terms of the original agreement whereby Defendants agreed that all Plaintiff's dental described herein [*sic*] would be included in Plaintiff's $19,940.00 cash payment.

WHEREFORE, Plaintiffs claim of the Defendants, a sum in excess of One Hundred Thousand ($100,000) Dollars and such other relief as this Honorable Court would deem appropriate.

Amended Complaint, dated 5/18/11, at 8-9.[7]

The trial court here opined, "no express contract has been produced" and observed that Appellants had admitted "that no written contract specifying the alleged terms of the agreement exists." Trial Court Opinion, dated 10/23/2013, at 7. The trial court noted that "an implied contract is

_____

[7] Exhibit "A" annexed to the amended complaint is a copy of a typewritten list of procedures done in the limited treatment plan chosen by Appellant, indicating a total cost of $19,940.00. The list is not signed or dated by either party and indicates no particular schedule for payment, except with notations by some of the entries indicating that the work had been done. Exhibit "B" is a compilation of the before and "after" photos purportedly showing what Appellant could look like if she had had all of the recommended work done.

one imposed by force of law by virtue of the fact that the parties engage in activities which create mutual obligations," before noting that "the basis of [Appellants'] breach of contract claim is that [Appellees] would act with due care and would meet the standard of care in performing tooth implants and cosmetic surgery, and that [Appellees] failed to competently do so." *Id*. Accordingly, the trial court concluded, "the gravamen of the action is in medical malpractice, as there were no special facts or circumstances developed through discovery supporting a breach of contract claim separate from a negligence claim." *Id*. at 8.

Our Supreme Court has recently observed:

> A negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

***Bruno v. Erie Insurance***, ___ A.3d ___, ___, 2014 WL 7089987 at *19 (Pa. filed December 14, 2014) (citation omitted).

In the instant case, the amended complaint refers to duties that are "imposed by law as a matter of social policy, rather than one imposed by mutual consensus; thus [the] action [lies] in tort." *Id*. at ___, 2014 WL at *18 (citation omitted). Neither the photograph representing what might have been had Appellant had all of the work recommended done, nor the list of procedures in the limited treatment plan that Appellant actually

requested, present "specific executory promises which comprise the contract" so as to sustain a breach of contract action. *Id*. at 19. Accordingly, the trial court did not abuse its discretion or err as a matter of law in granting Appellee's motion for summary judgment on the breach of contract claim.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2015