870 A.2d 850

**Eric FINE, Appellant,**

v.

**Mary Anne CHECCIO, D.D.S., Appellee.**

**Rosezetta Marie Ward, Appellee,**

v.

**Jeffrey W. Rice, D.M.D. and Jeffrey W. Rice, D.M.D., P.C., Appellants.**

**Nos. 55 EAP 2003, 68 WAP 2003.**

Supreme Court of Pennsylvania.

Argued April 15, 2004.

Decided March 30, 2005.

Allen Paul Neely, Esq., State College, for Jeffrey W. Rice, D.M.D., P.C.

Patrick John Loughren, Esq., for Rosezetta Marie Ward.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

These are consolidated appeals, in which Appellant Eric Fine ("Fine") sued Appellee Mary Anne Checcio, D.D.S. ("Dr. Checcio"), and Appellee Rosezetta Marie Ward ("Ward") sued Appellants Jeffrey W. Rice, D.M.D. and Jeffrey W. Rice,

D.M.D., P.C. (collectively, "Dr.Rice"), for dental malpractice. Dr. Checcio and Dr. Rice each filed a motion for summary judgment based on the two year statute of limitations in 42 Pa.C.S. § 5524(2).[1] In their respective responses, Fine and Ward raised the discovery rule and the doctrine of fraudulent concealment. At the trial court level, Dr. Checcio's motion for summary judgment was denied, but Dr. Rice's motion for summary judgment was granted. The Superior Court reversed the trial court in both cases. We conclude that neither Dr. Checcio nor Dr. Rice was entitled to summary judgment. Accordingly, for the reasons that follow, we reverse the Superior Court's order in the appeal brought by Fine and affirm the Superior Court's order in the appeal brought by Dr. Rice.

The record on summary judgment in each of these cases may be summarized as follows:

*Fine v. Dr. Checcio*

In June of 1998, Dr. Checcio recommended that Fine's four wisdom teeth, three of which were impacted and one malaposed, be surgically extracted. Fine accepted Dr. Checcio's recommendation and signed a consent form, which set forth the complications and physical conditions that could follow the surgery. The consent form included: "Lip, tongue, chin, gums, cheeks, and teeth, Parasthesia/Anesthesia (Numbness may be permanent)". (R.198a). Dr. Checcio and Fine discussed the procedure and what Fine could expect. While Dr. Checcio testified in her deposition that she explained to Fine that the risk in his case for post-operative numbness was higher than usual because of the position of the inferior alveolar nerve in his mouth, Fine testified in his deposition that Dr. Checcio did not do so.

---

1. It is undisputed in both appeals that 42 Pa.C.S. § 5524(2) controls. The statute states:

 § 5524. Two year limitation
 The following actions and proceedings must be commenced within two years:

 * * *

 (2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

 42 Pa.C.S. § 5524(2).

Dr. Checcio removed Fine's four wisdom teeth on July 17, 1998, cutting soft tissue and drilling bone. At that point, Fine had pain, bleeding, infection, swelling, and numbness on both sides of his face. As of July 17, 1998, Fine knew he was "hurt"; considered the conditions he was experiencing to be "normal"; believed the facial numbness to be one of several "after-surgery effects"; and found the numbness "significant" in scope. (R. 175a, 343a, 347a). Except for the numbness, these conditions disappeared entirely. From July 20, 1998 to October 9, 1998, Fine saw Dr. Checcio in her office on ten separate occasions. During each of the visits, Fine and Checcio discussed the lack of sensation that Fine continued to experience in his face. According to Fine, Dr. Checcio repeatedly told him that it would take about six months for the numbness to subside. According to Dr. Checcio, she consistently gave Fine a balanced prognosis, informing' him that in the worst case scenario, she would refer him to an oral maxillofacial surgeon for an evaluation. While sensation returned to most of Fine's face, the numbness in an area approximately two fingers in width and an inch in length on the left side of his lip and chin persisted. On April 16, 1999, Fine signed an authorization that permitted his attorney to retrieve his medical records from the surgery. About a year after the surgery was performed, Fine came to believe that the persistent numbness was abnormal.

On August 8, 2000, Fine commenced an action in tort against Dr. Checcio. In his amended complaint, Fine alleged, *inter alia,* that Dr. Checcio was negligent in transecting his inferior alveolar nerve during the surgery and for failing thereafter to refer him to a neurosurgeon. Fine also alleged that the damage to the nerve caused him permanent facial numbness. Dr. Checcio raised the statute of limitations as an affirmative defense in her answer and new matter.

On November 5, 2001, Dr. Checcio filed a motion for summary judgment, asserting that Fine's action, filed on August 8, 2000, was time-barred under 42 Pa.C.S. § 5524(2), inasmuch as it was not filed within two years of July 17, 1998, the date of Fine's surgery. In response, Fine asserted that there

existed material, disputed facts as to whether the limitations period was tolled under the discovery rule or the doctrine of fraudulent concealment. The trial court denied Dr. Checcio's motion for summary judgment, without opinion. The case proceeded to trial. On April 26, 2002, a jury returned a $500,000 verdict in Fine's favor. Dr. Checcio's post-trial motions were denied. A judgment was entered in Fine's favor on August 28, 2002. Dr. Checcio filed a timely appeal in the Superior Court.

On appeal, Dr. Checcio asserted, *inter alia,* that the trial court erred in denying her motion for summary judgment. In an unpublished opinion, the Superior Court agreed and reversed the judgment for Fine.[2] The Superior Court found that on July 17, 1998, when the surgery ended, Fine knew that he was hurt and that he was experiencing significant and unexpected numbness. Based on these facts, the Superior Court concluded that the discovery rule was inapplicable because Fine knew of his injury and its cause at the time the injury was inflicted. Determining that Fine failed to establish that Dr. Checcio either intentionally or unintentionally concealed the true nature of his injury from him, the Superior Court also concluded that the doctrine of fraudulent concealment was not triggered. Thus, the Superior Court ruled that the limitations period in 42 Pa.C.S. § 5524(2) began to run on July 17, 1998, and held that Fine's action, having been commenced more than two years from that date, was time-barred.

Fine filed a petition for allowance of appeal, which this court granted.

*Ward v. Dr. Rice*

On February 8, 1995, Dr. Rice recommended to Ward that her four impacted wisdom teeth be surgically removed and explained the surgical procedure he would perform. In Dr. Rice's experience, temporary paresthesias and anesthesias commonly followed the procedure. It was Dr. Rice's customary practice to inform patients like Ward that paresthesia and

2. Dr. Checcio raised two other issues on appeal. Given its decision in regard to Dr. Checcio's motion for summary judgment, the Superior Court did not reach these additional issues.

numbness to the lip were complications of wisdom tooth extraction. In his deposition, Dr. Rice testified that because Ward was older, he told her that the risk of numbness increases with age. Ward testified in her deposition that no such conversation with Dr. Rice took place. Dr. Rice's assistant provided Ward with a consent form, which she signed. In the consent form, Ward acknowledged that Dr. Rice had explained the nature, purpose, and results of the operation to her.

Dr. Rice surgically extracted Ward's four wisdom teeth on March 28, 1995, cutting tissue and drilling bone. Immediately following the surgery, Ward's face was sore and numb. When the hospital where the surgery was performed telephoned Ward the next day to inquire about her condition, Ward indicated that she was fine and did not mention the soreness or numbness. The numbness on the left side of Ward's face continued. Ward had numerous post-operative office visits with Dr. Rice, starting on April 5, 1995, and ending on January 22, 1996. During the visits, Ward and Rice discussed her facial numbness. Ward testified that Dr. Rice repeatedly told her that sensation would return in two months' time. Dr. Rice testified that he advised Ward that numbness is a complication of the operation he performed; that statistics show that feeling could return in about two months; and that because no one can know what the future holds, there was hope and a chance of recovery. At Ward's seventh office visit with Dr. Rice on September 20, 1995, Dr. Rice referred her to Steven Kaltman, D.M.D. On October 11, 1995, Ward consulted with Dr. Kaltman, who outlined options for treating the numbness and pain. Ward returned to Dr. Rice for one last office visit on January 22, 1996. In March of 1997, Dr. Rice referred Ward to another oral surgeon for a consultation. At that point, Ward decided to sue Dr. Rice.

On September 26, 1997, Ward commenced an action in tort against Dr. Rice. Ward alleged that Dr. Rice committed a battery in performing the surgery without her informed consent, and was negligent in severing her inferior alveolar nerve and for failing to refer her to a neurosurgeon for repair.

Ward also alleged that Dr. Rice's battery and negligence caused her nerve damage, severe pain, numbness, and discomfort. Dr. Rice raised the statute of limitations as an affirmative defense in his answer and new matter.

On February 15, 2002, Dr. Rice filed a motion for summary judgment, asserting that the limitations period in 42 Pa.C.S. § 5524(2) expired on March 29, 1997, which was two years after the surgery, and that Ward's action, commenced on September 26, 1997, was barred under the statute. Ward responded that her action was timely insofar as the record showed that the statute of limitations was tolled under the discovery rule and the doctrine of fraudulent concealment.

On June 18, 2002, the trial court granted Dr. Rice's motion and ordered summary judgment in Dr. Rice's favor. The trial court determined that the discovery rule did not toll the statute of limitations on Ward's claims because Ward knew of her injury and its cause immediately following the surgery and knew that her condition was not improving. The trial court also determined that Ward did not sustain her burden of showing that Dr. Rice concealed Ward's condition from her inasmuch as she experienced pain and numbness as soon as the surgery was completed. Ward filed a timely appeal.

In a published opinion, the Superior Court reversed the judgment entered for Dr. Rice and remanded to the trial court for further proceedings. *Ward v. Rice*, 828 A.2d 1118 (Pa.Super.Ct.2003). Observing that Ward remained under Dr. Rice's care after the surgery and relied upon his assurances that her pain and numbness would subside, the Superior Court determined that "a jury could conceivably conclude that [Ward's] failure to investigate the possible causes of her condition until the first referral to Dr. Kaltman on October 11, 1995, was reasonable . . . ." *Id.* at 1125. The court also determined that Dr. Rice's assurances of full recuperation, which lulled Ward into a false sense of security, and Dr. Rice's failure to refer her at the optimum time to a neurosurgeon, which impeded her ability to rectify her condition, constituted "concealment." *Id.* & n. 2. Based on the view that the statute of limitations begins to run when an injured person in Ward's position loses

confidence in her doctor, the Superior Court next determined that Ward's office visit to Dr. Kaltman on October 11, 1995, was evidence of Ward's loss of confidence in Dr. Rice and was reasonable, such that the commencement of her action on September 26, 1997, was timely. *Id.*

Dr. Rice filed a petition for allowance of appeal, which this court granted. Because Dr. Rice's and Fine's respective requests for review covered the same issues; namely, whether the Superior Court erred in its determinations regarding the discovery rule and the doctrine of fraudulent concealment in connection with a motion for summary judgment that is based on the statute of limitations, we consolidated these appeals.

The Pennsylvania Rules of Civil Procedure that govern summary judgment instruct in relevant part, that the court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. Pa.R.C.P.1035.2(1). Under the Rules, a motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. Note to Pa.R.C.P.1035.2.[3] In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. SEPTA*, 565 Pa. 211, 772 A.2d 435, 438 (2001). Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205, 206 (1991).

**3.** An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 571 Pa. 580, 812 A.2d 1218, 1221 (2002). As the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is de novo; thus, we need not defer to the determinations made by the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002); Pa.R.A.P. 2111(a)(2).

 Our analysis begins with the principles in this area of the law that are settled. The Judicial Code provides in pertinent part that limitations periods are computed from the time the cause of action accrued. 42 Pa.C.S. § 5502(a). In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion. *Kapil v. Association of Pa. State College and Univ. Faculties*, 504 Pa. 92, 470 A.2d 482, 485 (1983). Thus, we have stated that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983). Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted. *See Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788, 791 (1959). Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute. *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 204 A.2d 473, 475 (1964). *Pocono International*, 468 A.2d at 471. Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action. *Id.*

There are exceptions that act to toll the running of a statute of limitations. The discovery rule and the doctrine of fraudulent concealment are such exceptions. As both are implicated in this appeal, we will discuss them seriatim.

 The discovery rule originated in cases in which the injury or its cause was neither known nor reasonably knowable. *See Lewey v. H.C. Frick Coke Co.*, 166 Pa. 536, 31 A. 261 (1895) (concluding that the statute of limitations did not bar the lawsuit of a plaintiff who could not know that a trespasser had subterraneously extracted coal from his land); *Ayers*, 154 A.2d at 788 (concluding that the plaintiff was entitled to present evidence that he did not and could not know that his pain was the result of a sponge left in his body during an operation performed nine years before). The purpose of the discovery rule has been to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured, so that

he has essentially the same rights as those who have suffered such an injury. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1043 (1992).

As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause. *Pocono International,* 468 A.2d at 471. We have clarified that in this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised. As we have stated: " '[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.' " *Crouse v. Cyclops Industries,* 560 Pa. 394, 745 A.2d 606, 611 (2000) (quoting *Deemer v. Weaver,* 324 Pa. 85, 187 A. 215, 217 (1936) (citation omitted)). Put another way, "[t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.,* 167 Pa. 136, 31 A. 484, 485 (1895). While reasonable diligence is an objective test, "[i]t is sufficiently flexible...to take into account the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Crouse,* 745 A.2d at 611 (quotation omitted). Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others." *Id.*

Therefore, when a court is presented with the assertion of the discovery rules application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. *Id.*

Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. *Hayward,* 608 A.2d at 1043. *See Smith v. Bell Telephone Co. of Pennsylvania,* 397 Pa. 134, 153 A.2d 477, 481 (1959). Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law. *Pocono International,* 468 A.2d at 471.

When the discovery rule applies, the statute of limitations does not commence to run at the instant that the right to institute suit arises, i.e., when the injury occurs. *Id.* at 611; *Ayers,* 154 A.2d at 791. Rather, the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct. *Id.* Whether the statute of limitations has run on a claim is a question of law for the trial court to determine; but the question as to when a party's injury and its cause were discovered or discoverable is for the jury. *Hayward,* 608 A.2d at 1043.

While these broad parameters of the discovery rules operation are established, there is an aspect of the rule that has remained unsettled. Based on language in one of our cases, *Schaffer v. Larzelere,* 410 Pa. 402, 189 A.2d 267 (1963), this court has been evenly divided as to whether there is a principle that further qualifies the discovery rules application. *See Murphy v. Saavedra,* 560 Pa. 423, 746 A.2d 92 (2000); *Baumgart v. Keene Building Products Corp.,* 542 Pa. 194, 666 A.2d 238 (1995). In *Schaffer,* we held that the plaintiff should have been allowed to amend his reply to defendants motion for judgment on the pleadings, which was based on the statute of limitations, to add allegations that his knowledge of defendants negligence was delayed by defendants deliberate concealment. *Id.* at 270. In doing so, we observed that statutes of limitations may be tolled under different theories and then stated that "if the existence of the injury is not known to the

complaining party and such knowledge cannot be reasonably ascertained *within the prescribed period,* the limitation does not begin to run until discovery of the injury is reasonably possible." *Id.* (emphasis added).

Relying on this language in subsequent cases, some Justices have indicated that the discovery rule requires that it first be determined whether the injury and its cause were reasonably ascertainable at any point within the prescribed statutory period. If they were, then the discovery rule does not apply and the statute of limitations is not tolled, even though a party did not know nor could have reasonably known of his injury and its cause at the time the injury occurred. *See Saavedra,* 746 A.2d at 93–95 (opinion in support of affirmance); *Baumgart,* 666 A.2d at 239–41 (same). Other Justices, however, have believed that the discovery rule is not restricted to those cases where an injury or its cause is not reasonably discovered until after the expiration of the limitations period, despite *Schaffer's* language. Rather, the discovery rule always applies to toll the statute of limitations if at the time the injury occurs, the injury or its cause is neither known nor reasonably knowable. *See Saavedra,* 746 A.2d at 98–101 (opinion in support of reversal); *Baumgart,* 666 A.2d at 241–45 (same).

Today, we hold that it is not relevant to the discovery rules application whether or not the prescribed period has expired; the discovery rule applies to toll the statute of limitations in any case where a party neither knows nor reasonably should have known of his injury and its cause at the time his right to institute suit arises.

We have several reasons for our holding. First, the observation made in *Schaffer,* to the extent that it was intended to limit the discovery rules application, constitutes non-binding dicta inasmuch as our holding therein concerned whether the plaintiff was permitted to amend a pleading to assert that defendant had concealed the facts underlying his negligent conduct. *Schaffer,* 189 A.2d at 270. *See Albert v. Zoning Hearing Bd. of North Abington Twp.,* 578 Pa. 439, 854 A.2d 401, 410 (2004). Second, an interpretation of a statute of

limitations that premises a party's access to the discovery rule on whether he knew or was able to know of his injury and its cause within the prescribed period would in many instances lead to unreasonable and arbitrary results and would be contrary to our long-standing approach in this area. Under such a conclusion, for example, a party who is reasonably diligent, but is unable to ascertain that he is injured until the day before the limitations period has run, must file suit within twenty-four hours or be time-barred by the statute of limitations. If that same party, however, reasonably discovers his injury the day after the prescribed period has expired, he has the full statutory period within which to commence an action. In *Ayers,* we stated that a statute of limitations, like all statutes, must be read with reason and common sense; that its application to a given set of circumstances, must not be made to produce something that the General Assembly could never have intended; and that its interpretation must be guided by the presumption in the Statutory Construction Act that the legislature does not intend a result that is absurd, impossible of execution or unreasonable. *Ayers,* 154 A.2d at 789. *See* 1 Pa.C.S. § 1922(1) (formerly, 46 P.S. § 552). Third and finally, the recognized purpose of the discovery rule—to see to it that persons who are reasonably unaware of an injury that is not immediately ascertainable have essentially the same rights as those who suffer an immediately ascertainable injury—would be nullified if the rule were applied only to those persons who reasonably discover their injury and its cause after the limitations period has run. *See Hayward,* 608 A.2d at 1043.[4]

In addition to the discovery rule, the doctrine of fraudulent concealment serves to toll the running of the statute of limitations. The doctrine is based on a theory of

4. The language in *Schaffer* underlying this court's division as to the discovery rule's application has been repeated in many opinions in boilerplate fashion. *See, e.g., Hayward,* 608 A.2d at 1043; *Bradley v. Ragheb,* 429 Pa.Super. 616, 633 A.2d 192, 194 (1993). Any of this court's decisions in which the discovery rule was not applied merely because the injury and its cause were known or knowable within the prescribed period are overruled in that regard. Any such decisions of other courts are disapproved.

estoppel, and provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts. *Deemer,* 187 A. at 215. The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception. *Id.* The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence. *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792, 794 (1987). While it is for the court to determine whether an estoppel results from established facts, it is for the jury to say whether the remarks that are alleged to constitute the fraud or concealment were made. *Nesbitt,* 204 A.2d at 476.

As of yet, we have not directly considered and ruled upon the circumstances under which a defendant, once estopped under the doctrine of fraudulent concealment, may invoke the statute of limitations and commence its running. Inasmuch as the doctrine is premised on a defendant's obstructionist conduct, there is an argument that a plaintiff's actual knowledge, of his injury and its cause, as opposed to the knowledge that reasonable diligence would give him, should control. *See e.g., Urland v. Merrell–Dow Pharmaceuticals, Inc.,* 822 F.2d 1268, 1277–83 (3d Cir.1987) (Becker, J., dissenting) (arguing that under Pennsylvania law, the doctrine of fraudulent concealment requires a plaintiff's actual knowledge of his injury and its cause before the statute of limitations begins to run).

▮ We are of the view, however, that the standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment. This is, we believe, the standard that will serve one of the overarching tenets in this area of our jurisprudence—the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based. *Pocono International,* 468 A.2d at 471. Moreover, because the doctrine captures even uninten-

tional conduct on a defendants part and the standard of reasonable diligence requires from a party only that knowledge which is reasonably attained under the circumstances, we do not believe that deviation from that standard to a higher threshold of knowledge is warranted. Thus, we conclude that a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows or reasonably should know of his injury and its cause.

We now apply these exceptions to the running of the statute of limitations in each of the cases before us. We begin with Fine's appeal. With respect to the discovery rule's application, we must address what the record reveals as to Fine's ability, exercising reasonable diligence, to know of his injury and its cause. *See Pocono International*, 468 A.2d at 471. Dr. Checcio argues that the record established that Fine knew or was able to know, in the exercise of reasonable diligence, that he was injured by another's conduct at the time the injury was inflicted on July 17, 1998 as a matter of law, because on that date, he knew that his face was numb. Fine argues that such was not the case and that it was for the jury to decide whether he knew or should have known that he was injured at that point insofar as the record showed that he had every reason to believe that the numbness he was experiencing was merely a normal side-effect of the wisdom tooth extraction.

Viewing the summary judgment record as we must, in the light most favorable to the non-moving party, *see supra*, p. 8, we agree with Fine. It is important to keep in mind that in this case, the record revealed that facial numbness was indicative of two distinct phenomena. Facial numbness was either a temporary physical consequence that resulted from the very nature of the procedure that Dr. Checcio performed on Fine or it was a manifestation of Fine's injury, a permanent condition that resulted from underlying nerve damage. Until conflicts in the record were resolved, *see supra*, pp. 2–3, and inferences from relevant facts were drawn, the issue of whether Fine knew, or should have known through the diligence that a reasonable person would have exercised

under the circumstances, that the numbness he was experiencing on July 17, 1998, was a manifestation of injury, as, opposed to, or in addition to, the typical condition that dental surgery produces remained disputed. Therefore, to rule against the discovery rule's application, the Superior Court had to undertake these fact-resolution and inference-drawing functions. In doing so, the court erred. We emphasize that it is not the court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried. *See* Pa.R.C.P. 1035.2(1).

Turning to the doctrine of fraudulent concealment, while Fine argues that the issue had to be resolved at trial, Dr. Checcio argues that Fine failed to show that he could sustain his burden of proof on the doctrine's application. Here too, we agree with Fine. We conclude that the Superior Court's determination that Fine failed to establish that the statute of limitations was tolled by the doctrine disregarded the court's proper role when presented with a motion for summary judgment and was erroneous. Fine based his assertion for the application of the doctrine on post-surgery statements he attributed to Dr. Checcio. As is reflected in their respective depositions, however, the parties disputed what Dr. Checcio actually said. *See supra,* p. 3. As we have instructed, it is for the jury to determine what remarks a defendant made to a plaintiff, before a court can decide whether they amounted to fraudulent concealment. *See Nesbitt,* 204 A.2d at 476 (concluding that unless disputed facts as to what was said to the plaintiff are resolved, a fair and intelligent judgment by the court as to whether the defendant is estopped from asserting the statute of limitations due to concealment is impossible).

Therefore, we hold that Dr. Checcio was not entitled to summary judgment because there were genuine issues of material fact necessary to her statute of limitations defense. *See* Pa.R.C.P. 1035.2(1).[5]

5. Given our conclusion, we need not and do not address Fine's additional argument that the Superior Court erred in ignoring his argument concerning the effect of his claim that Dr. Checcio failed to make a

We now turn to Dr. Rice's appeal. With respect to the discovery rule, the arguments made by Ward and Dr. Rice reflect those made by the parties in Fine's appeal. Dr. Rice argues against the discovery rule's application, contending that since Ward knew immediately after the surgery on March 28, 1995, that she was numb, she also knew at the same time that she had suffered an injury. Ward responds that given the nature of the procedure that she underwent and what she understood the procedure to involve, the record does not establish that she knew or reasonably could have known on March 28, 1998 that her numbness was indicative of an injury, and not a temporary post-operative condition.

 Ward is correct. For the same reasons we stated in Fine's appeal, the facts and inferences that are relevant to the discovery rule's application—whether Ward knew or could have reasonably known that the numbness she admitted to experiencing upon the surgery's completion was a manifestation of an injury, as opposed to, or in addition to, the typical and temporary conditions that dental surgery produces—are disputed and must be resolved at trial. *See supra*, p. 5. Therefore, as the Superior Court determined, Dr. Rice's motion for summary judgment should have been denied. *See* Pa.R.C.P. 1035; *Hayward*, 608 A.2d at 1040.

At this point, however, we observe that although we affirm the Superior Court's result, we do not embrace the court's analysis. The court focused on whether a jury could find Ward's failure to investigate the causes of her condition until some seven months after the surgery to be reasonable. *See Ward*, 828 A.2d at 1125. This is not the question that Dr. Rice's motion for summary judgment and Ward's response raising the discovery rule required the court to address. The court should have asked and answered whether there are genuine issues of material fact as to whether Ward knew or was unable to know, despite the exercise of reasonable diligence, that she was injured and by what cause at the time the

timely referral to a neurosurgeon on the running of the statute of limitations.

injury was inflicted. *See Pocono International,* 468 A.2d at 471.

Likewise, with regard to the doctrine of fraudulent concealment, while we agree that the Superior Court correctly determined that the doctrine precluded the entry of summary judgment for Dr. Rice, we disagree with the court's approach. The court was in no position to base its ruling on the conclusion that Dr. Rice's post-surgery statements were "assurances" of "full recuperation" that amounted to concealment. *Ward,* 828 A.2d at 1125. This is because the record shows that the statements that Dr. Rice made to Ward about the numbness during post-operative visits are disputed. *See supra,* p. 5. Thus, application of the doctrine cannot be resolved until the jury determines at trial what Dr. Rice said to Ward in this regard. *See Nesbitt,* 204 A.2d at 476. Finally, we also take issue with the Superior Courts conclusion that Dr. Rice's failure to refer Ward to a neurosurgeon in a timely fashion, which prevented her from securing corrective measures, constituted a second act of concealment. In doing so, the Superior Court usurped the province of the jury, finding facts regarding Dr. Rice's conduct that remain disputed, and misapprehended the inquiry that the doctrine of fraudulent concealment entails, which is whether a defendant's statements caused the plaintiff to relax his vigilance or deviate from inquiring into the facts. *See Deemer,* 187 A. at 215.[6]

Therefore, we hold that Dr. Rice was not entitled to summary judgment because there are genuine issues of material fact as to his statute of limitations defense. *See* Pa.R.C.P. 1035.2(1).[7]

---

**6.** Because we conclude that application of the doctrine of fraudulent concealment to toll the statute of limitations is an open question to be resolved at trial, we need not and do not address the Superior Court's determination that the tolled statute of limitations began to run in October 1995 when Ward consulted with another oral surgeon. *See id.* at 1125 n. 2.

**7.** Given our conclusion, we need not and do not address Dr. Rice's argument that Ward is prohibited from avoiding the statute of limitations by asserting a negligent failure to refer claim.

276

For these reasons, in Fine's appeal, we reverse the order of the Superior Court reversing the order of the trial court denying Dr. Checcio's motion for summary judgment; we reinstate the order of the trial court; and we remand the case to the Superior Court for the resolution of any properly preserved outstanding issues. For these reasons, in Dr. Rice's appeal, we affirm the order of the Superior Court and remand the case to the trial court for further proceedings.

Madame Justice Newman did not participate in the consideration or decision of this case.