GLD-088                                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3883
_____

KURT DANYSH,
                                          Appellant

v.

ELI LILLY and COMPANY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 10-2116)
District Judge:  Honorable John E. Jones, III
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
January 12, 2012

Before:  FUENTES, GREENAWAY, JR., AND STAPLETON, Circuit Judges

(Opinion filed : January 31, 2012)
_____

OPINION
_____

PER CURIAM

        Pro se appellant Kurt Danysh appeals the District Court's order granting summary

judgment to the defendant, Eli Lilly and Company ("Lilly").  We have jurisdiction under

28 U.S.C. § 1291 and exercise a plenary standard of review.  See State Auto Prop. & Cas.

Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). For the reasons set forth below, we will summarily affirm the District Court's judgment.

This action concerns Lilly's drug Prozac. A doctor prescribed Prozac for Danysh on April 8, 1996. On April 25, 1996, a few days after discontinuing his use of the drug, Danysh shot and killed his father.

Danysh confessed to the crime, and almost immediately attributed his behavior to Prozac. He said that the medication caused him to "act differently," so that "when something bother[ed] [him], it bother[ed] [him] to extreme." However, despite Danysh's suspicions, he was unable to find evidence to support his theory, and he ultimately pleaded guilty in Pennsylvania state court. In November 1997, the trial court sentenced him to 22.5 to 60 years' imprisonment, and the Superior Court affirmed.

In May 2003, Danysh filed a petition pursuant to Pennsylvania's Post Conviction Relief Act (PCRA). He claimed that he had discovered new evidence linking Prozac to violent behavior. In support of his petition, he presented a letter from Donald H. Marks, M.D., Ph.D., stating that "a wide body of scientific literature" showed that Prozac "would be capable of interfering with thought and judgment to enough a degree to interfere with your ability to understand the significance of a violent act." Danysh also submitted records of adverse reactions associated with Prozac and an article by three psychiatrists concerning side effects of antidepressant drugs. He continued to supplement his petition, and in July 2004, presented 31 additional exhibits that purportedly "highlight[ed] Prozac's ability to cause violent/suicidal behavior in individuals" and "indicate[d] that

2

the manufacturers of Prozac . . . have purposely hid[den] the dangers associated with these drugs, including their potential to cause violent behavior."

The PCRA courts denied all relief to Danysh. Nevertheless, he continued to research his theory. In August 2008, he allegedly learned that he was a "poor metabolizer of Prozac," which caused him to be "abnormally susceptible to the negative side effects of Prozac." Then, in 2009, he read an article reporting, based on Lilly's internal documents, that the company had known since 1988 that Prozac could cause side effects like the ones that he allegedly experienced.

On August 16, 2010, Danysh instituted this civil action. He claimed, under state law, that Lilly had committed fraud and negligence, violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), and breached an express warranty. Danysh alleged, at bottom, that Lilly had unlawfully failed to warn him that Prozac could cause violent behavior.

A magistrate judge issued a report and recommendation concluding that Lilly was entitled to summary judgment because Danysh's action was barred by the applicable statutes of limitations. The District Court approved and adopted the report and recommendation, and Danysh then filed a timely notice of appeal to this Court.

We agree with the District Court's disposition of this case. Pennsylvania law, which governs this diversity action, see Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006), provides varying statutes of limitations for Danysh's different causes of actions. These limitation periods range from two years (fraud and negligence, see Ash v. Cont'l

3

Ins. Co., 932 A.2d 877, 879 (Pa. 2007)) to six years (the UTPCPL, see Lesoon v. Metro. Life Ins. Co., 898 A.2d 620, 627 (Pa. Super. Ct. 2006)). For the sake of simplicity, and because it does not affect the result of this case, we will proceed as if all of Danysh's claims were subject to the six-year statute of limitations.

The statute of limitations begins to run on the date that "the cause of action accrued." 42 Pa. Cons. Stat. § 5502(a). A cause of action accrues "when the injury is inflicted." Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005). Danysh's causes of action therefore accrued in 1996, when he was allegedly injured by the defendant's failure to warn him of Prozac's possible side effects. See generally id.; see also William A. Graham Co. v. Haughey, 646 F.3d 138, 150 (3d Cir. 2011) ("the 'accrual' of a cause of action occurs at the moment at which each of its component elements has come into being as a matter of objective reality"). Therefore, the statute of limitations presumptively began to run in 1996 and expired long before Danysh filed his August 2010 complaint.

Danysh argues that the statute of limitations should be tolled pursuant to the discovery rule or the doctrine of fraudulent concealment. We agree with the District Court that these doctrines do not help Danysh here.

Under the discovery rule, the statute of limitations "does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." Fine, 870 A.2d at 859. More specifically, the limitations period commences upon the plaintiff's "actual or constructive

4

knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." Gleason v. Borough of Moosic, 15 A.3d 479, 484 (Pa. 2011).

Here, the undisputed evidence shows that Danysh knew of his injury and Lilly's alleged role in July 2004, when he provided a wealth of evidence to the PCRA court in support of his claim that Prozac had caused him to behave violently and that Lilly had fraudulently withheld its knowledge of the drug's side effects. While Danysh contends that the discovery rule should toll the limitations period until August 2008 when he discovered that he was a "poor metabolizer of Prozac" or sometime in 2009 when he learned of the defendants' internal documents, he had unquestionably "discover[ed] . . . that he ha[d] been injured and that his injury ha[d] been caused by another party's conduct" well before those dates. Fine, 870 A.2d at 859; see generally Zeleznik v. United States, 770 F.2d 20, 23 (3d Cir. 1985) (explaining that the limitations period is "not postponed until the injured party knows every fact necessary to bring his action"). Therefore, the District Court correctly rejected Danysh's discovery-rule argument as a matter of law.

Likewise, we agree with the District Court that the doctrine of fraudulent concealment does not render Danysh's claim timely. Under this doctrine, "the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." Fine,

5

870 A.2d at 860. However, even if a limitation period is tolled by virtue of fraudulent concealment, it will begin "to run when the injured party knows or reasonably should know of his injury and its cause." Id. at 861. As discussed above, reasonable minds would not differ in finding that Danysh knew of his injury and its alleged cause, at the latest, in July 2004, more than six years before he instituted this action. Hence, his claims are time barred.

Accordingly, we will summarily affirm the District Court's order granting summary judgment to the defendant. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.