**[J-52A&B-2019][M.O. - Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| IN RE: RISPERDAL LITIGATION | : | No. 22 EAP 2018 |
| | : | |
| JONATHAN SAKSEK, | : | Appeal from the Judgment of Superior |
| | : | Court entered on 11/13/17 at No. 576 |
| Appellant | : | EDA 2015 (reargument denied 1/16/18) |
| | : | affirming the judgment entered on |
| v. | : | 2/12/15 in the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| | : | No. 00183 February Term, 2014, No. |
| JANSSEN PHARMACEUTICALS, INC., | : | 296 March term, 2010 |
| JOHNSON & JOHNSON COMPANY, | : | |
| JANSSEN RESEARCH AND | : | |
| DEVELOPMENT, LLC, | : | |
| | : | |
| Appellees | : | ARGUED: May 16, 2019 |

| | | |
|---|---|---|
| IN RE: RISPERDAL LITIGATION | : | No. 23 EAP 2018 |
| | : | |
| JOSHUA WINTER, | : | Appeal from the Judgment of Superior |
| | : | Court entered on 11/13/17 at No. 590 |
| Appellant | : | EDA 2015 (reargument denied 1/16/18) |
| | : | affirming the judgment entered on |
| v. | : | 2/10/15 in the Court of Common Pleas, |
| | : | Philadelphia County, Civil Division at |
| | : | No. 00170 March Term, 2014, No. 296 |
| JANSSEN PHARMACEUTICALS, INC., | : | March term, 2010 |
| JOHNSON & JOHNSON COMPANY, | : | |
| JANSSEN RESEARCH AND | : | |
| DEVELOPMENT, LLC, | : | |
| | : | |
| Appellees | : | ARGUED: May 16, 2019 |

*DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**          **DECIDED: November 20, 2019**

I agree with the majority that the intermediate and trial courts should not have credited Appellees' efforts to establish global accrual dates broadly applicable to all Risperdal cases. However, I respectfully differ with the conclusion that Appellees have failed to sufficiently negate the presence of issues of material fact, in the two cases presently in issue, concerning whether there was "reason to awaken inquiry and direct diligence in the channel to which it would be successful." Majority Opinion, *slip op.* at 11 (quoting *Fine v. Checcio*, 582 Pa. 253, 265 n.3, 870 A.2d 850, 857 n.3 (2005)).

Appellants all but acknowledge that they had reason to know that their excessive weight gain was "the unfortunate result of medical treatment." Brief for Appellants at 31; *see also id.* at 29 ("To be sure, Plaintiffs knew that they had gained significant weight while taking Risperdal."). Moreover, as the majority also relates, "[a]t all relevant times, weight gain was a reported risk of Risperdal." Majority Opinion, *slip op.* at 15. Therefore, it seems to me quite plain that Appellants should be charged with inquiry notice to determine whether they might have claims (albeit, that the accrual date for the statute of limitations is properly postponed until the age of their majority, *see* 42 Pa.C.S. §5533(b)).

Appellants and the majority appear to downplay the connection between Risperdal and excessive weight gain. For example, the majority credits Appellants' position that they may have "believe[d] that their condition was adequately explained as a normal byproduct of excessive weight gain." Majority Opinion, *slip op.* at 20 (dovetailing with Brief for Appellants at 29). The majority's position, and that of the appellants, appears to be that Appellants must have had reason specifically to know that they had developed gynecomastia. *See, e.g.*, *id.* at 14 ("[T]he Superior Court fails to distinguish between knowledge of the *physical condition* of large breasts and the critical knowledge of an *injury*, gynecomastia." (emphasis adjusted)).

But excessive weight gain is itself a serious medical condition (or at least a well-known indicator of serious medical issues) that should awaken inquiry.[1] Indeed, I am uncertain what a "normal byproduct" of excessive weight gain might be, since the condition simply is not normal. And, as the majority otherwise relates, commencement of the statutory limitations period does not depend upon knowledge of "the full extent of the injury, the fact of actual negligence, or precise cause." *Id.* at 11 (quoting *Nicolaou v. Martin*, ___ Pa. ___, ___, 195 A.3d 880, 893 (2018)).[2]

Ultimately, Appellants frame the central question in the case as "whether [they] should have appreciated by October 2006 that their breast growth may be related to their ingestion of Risperdal." Brief for Appellants at 32.[3] From my point of view, Appellees sufficiently went forward with the evidence demonstrating that Appellants

---

[1] Notably, both of the appellants have asserted that the condition of their breasts resulted in "mentally wounding [them] deeply." Response in Opposition to Motion for Summary Judgment dated Aug. 18, 2014, in *Saksek v. Janssen Pharmaceuticals, Inc.*, No. 183 Feb. Term 2014, at 2. It is difficult to understand why one who has suffered such a condition, while taking a drug known to cause weight gain, would not inquire further, in particular, through focused consultations with appropriate medical professionals.

[2] In the same vein, Appellants' assertion that they may have had "no idea that their problem might be tied to another's *tortious* conduct" misses the point that knowledge of *wrongful* conduct on the part of another is unnecessary. Brief for Appellants at 31 (emphasis added). From my perspective, when a person suffers a known, serious side effect of a medication, they have notice of both an injury and the involvement of another and, thus, should be deemed to be on inquiry notice to investigate potential claims. *Accord Ridenour v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 679 F.3d 1062, 1066 (8th Cir. 2012) (applying a more liberal variant of the discovery rule than that which pertains in Pennsylvania to conclude that a limitations period began to run when a plaintiff "was cognizant enough to ask a physician about a possible relationship between" a prescription drug and his mental condition).

[3] Significantly, under this framing of the issue -- with which I agree (except for the date specification) -- the question of whether Appellants' breast growth was a manifestation of gynecomastia is irrelevant.

should have been on inquiry notice from the time that they suffered excessive weight gain while taking Risperdal. While I appreciate that the record is substantially underdeveloped in terms of Appellants' response, given the above, it is my position that countervailing evidence of diligence -- including specific, timely consultations with physicians -- should have been proffered, if any was available. *See* Pa.R.C.P. No. 1035.3. In this regard, the record stands in sharp contrast to that presented in the recent *Nicolaou* decision. *See Nicolaou*, ___ Pa. at ___, 195 A.3d at 882-84 (chronicling a plaintiff's proffer concerning extensive medical consultations for treatment and to determine the etiology of prolific symptoms). It is significant to me, as well, that Appellants have advanced no evidence of a negative diagnosis or a misdiagnosis by a medical professional, as was the case in *Nicolaou* and *Wilson v. El-Daief*, 600 Pa. 161, 180-81, 964 A.2d 354, 365 (2009).[4]

While the discovery rule may pertain in both instances in which an injury is latent and when the involvement of another is not apparent, *see Wilson*, 600 Pa. at 174, 964 A.2d at 361-362, consistent with the legislative intent to foster closure via limitations periods, I would hold that the more manifest the symptoms, and the more apparent the

---

[4] Responsively, the majority reiterates that both of the appellants have attested that no physician ever told them that they suffered from gynecomastia or suggested that their breast growth could have been caused by Risperdal. Majority Opinion, *slip op.* at 17 n.6. However, none of the majority's or the appellants' statements in this regard are framed in terms of any inquiries by the appellants into their weight gain and breast growth, particularly in the critical period during the two years after their eighteenth birthdays, *i.e.*, the ordinary limitations period. Accordingly, although the Court can accept, for example, that Appellant Saksek had a designated primary care physician throughout this two-year period as related on his "plaintiff's fact sheet," no information is provided about any specific appointments or consultations, or, for that matter, if there was any contact at all between the appellant and such physician during this period. It is my position that summary judgment cannot be avoided via proffers at this level of abstraction.

involvement of another, the greater the degree of diligence that must be demonstrated by the plaintiff, in order to satisfy the governing standard of reasonable diligence.