J-S17019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CHIVON FORD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| AHF MONTGOMERY, INC. D/B/A | : | No. 2880 EDA 2023 |
| CHELTENHAM NURSING AND | : | |
| REHABILITATION CENTER | : | |

Appeal from the Order Entered October 5, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220802254

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.: **FILED DECEMBER 18, 2024**

Chivon Ford ("Appellant") appeals from the order granting summary judgment in favor of AHF Montgomery, Inc. d/b/a Cheltenham Nursing and Rehabilitation Center ("Appellee"). Since we find that there is an issue of material fact precluding summary judgment, we reverse the order and remand for further proceedings.

Appellant, who was a resident at Appellee's nursing facility between March and December 2020, initiated the underlying negligence action against Appellee after she fell in her room and sustained injuries. Specifically, on September 30, 2020, Appellant awoke around 4:00 a.m. to use the bathroom and, when she returned to her room, she slipped on a puddle of water on the floor next to her bed. She averred that the puddle, which had not been present before she went to bed at 9:00 that evening, formed from a leak in

the ceiling and/or the roof.  Staff responded to her room and found Appellant sitting on the floor next to her bed.  As a result, they added an entry in their maintenance log to notify the maintenance staff of the issue.  The log was later updated to indicate that maintenance intended to check the roof that day, but there is no record of anyone doing so or of what was found on the roof regarding the cause of the puddle and leak.  As will be discussed at length later, and critical to the issue raised on appeal, Joseph Novosat, the maintenance director, attested that he performed monthly roof inspections.

Appellee filed an answer and a motion for summary judgment. Appellant responded and Appellee submitted a reply, which included new documentation regarding the monthly roof inspections.  Two days later, the court granted Appellee's motion for summary judgment.

This timely appeal followed.  Appellant complied with the trial court's order to file a Pa.R.A.P 1925(b) concise statement of errors complained of on appeal, and the court issued a responsive Rule 1925(a) opinion asking us to affirm its order.  Appellant raises a single issue for our consideration:

> Did the lower court err in granting summary judgment when there was a genuine issue of material fact as [Appellant] was a business invitee owed the highest duty of care when she fell in a puddle of water caused by a leak in the roof over her room and [Appellee] knew or should have known of the leak when the roof was allegedly inspected monthly but discovery established no records were produced memorializing these inspections and no records were kept of the inspections by the maintenance staff?

Appellant's brief at 5 (capitalization altered).

Our review is guided by the following legal principles:

Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

**DeArmitt v. New York Life Ins. Co.**, 73 A.3d 578, 585 (Pa.Super. 2013) (cleaned up). Our Supreme Court has "emphasize[d] that it is not the court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried." **Fine v. Checcio**, 870 A.2d 850, 862 (Pa. 2005) (citing Pa.R.C.P. 1035.2(1)).

The requirements to sustain a negligence action are well-settled:

[T]he plaintiff must demonstrate the following four elements: (1) a duty or obligation recognized by the law that requires an actor to conform his actions to a standard of conduct for the protection of others against unreasonable risks; (2) failure on the part of the defendant to conform to that standard of conduct, *i.e.*, a breach of duty; (3) a reasonably close causal connection between the breach of duty and the injury sustained; and (4) actual loss or damages that result from the breach. Thus, the mere fact that a party was injured is not enough to entitle that person to damages. A plaintiff must show that a defendant owed a duty of care, and that this duty was breached. Indeed, the issue of whether the defendant owed a duty of care to the plaintiff is the primary question in a negligence suit.

**Shellenberger v. Kreider Farms**, 288 A.3d 898, 906 (Pa.Super. 2023), (cleaned up).

Appellant bore the burden of proving, *inter alia*, that Appellee knew or should have known of a roof defect at the nursing facility that caused water

to leak into her room. Appellee does not challenge the cause of the leak. Rather, in the motion for summary judgment, it averred that Appellant failed to prove that Appellee was on notice of the puddle. In her answer, Appellant emphasized that "the issue of notice does not arise from when [Appellee] first became aware of puddling in [her] room but rather, when they knew or should have known of defects in the roof which [Appellant] asserts caused the leak and ultimate puddling." Answer, 9/27/23, at ¶ 18. To that end, she noted that "[t]here were no records indicating when the roof was last inspected before the date of the leak as Mr. Novosat testified no records were kept." *Id*. at ¶ 16.

By way of background, Mr. Novosat attested during his deposition that he utilized a software program, known as TELS, to determine how often to conduct various forms of preventative maintenance on the building. *See* Deposition of Joseph Novosat, 7/12/23, at 21. With specific regard to the roof, TELS advised a monthly inspection, which included checking for cracks and blocked drains. *Id*. at 22. Mr. Novosat stated that he performed the monthly roof inspections but kept no records of his work. *Id*. at 22-23. As to the leak in question, he had no recollection of Appellant's fall, the leak in her room, its cause, or any repair work completed by himself or an outside contractor to fix the leak. *Id*. at 26-27, 32-33, 35, 37-38. Consequently, he opined that he had not been notified of the incident or the leak because if he had, he "would have remembered[.]" *Id*. at 35-36; *see also id*. at 40 (having

no "recollection of any water leaking from the roof into a vent in a room").[1] Nonetheless, he did indicate that the roof had been repaired since September 2020, which was when the incident occurred. *Id*. at 22. While he could not recall the nature of the work performed, he offered the following example: "If we saw a crack in the ductwork, we would seal it." *Id*. at 23.

To bolster Mr. Novosat's testimony that the roof was routinely inspected, Appellee attached a printout of a "work history report" from TELS to the summary judgment reply brief. *See* Reply Brief, 10/3/23, at Exhibit A. The single-page report included the due date of the roof inspection for every month in 2020 and a notation that either no action was recorded, or the task was "[m]arked as done on-time by Joseph Novosat" on a specific date. *Id*. Relevantly, it contained an entry stating that September's monthly inspection had been marked as completed by Mr. Novosat on September 4, 2020. However, there has been no testimony or affidavit proffered to explain how tasks are marked as completed in TELS. When asked during his deposition if TELS prompted him to do the check through the system, Mr. Novosat

---

[1] Notably, the maintenance log described hereinabove had been shown to Mr. Novosat during his deposition. He explained that the log was kept at the nurses' stations and provided the nurses a mechanism by which to report problems to maintenance, who would check the logs and fix any reported problems. *See* Deposition of Joseph Novosat, 7/12/23, at 28-29. To illustrate, the log included a request a few days before Appellant's fall to program the television channels and, on the day of the underlying incident, a report of the leak in Appellant's room. *See* Motion for Summary Judgment, 9/1/23, at Exhibit C. The comment following the reported leak indicated that a roof check would be completed that day. *Id*. However, Mr. Novosat had no knowledge regarding the notation or whether, and if so by whom, such a check was completed. *See* Deposition of Joseph Novosat, 7/12/23, at 26, 30.

answered, "No, it's automatically every month that it comes up." Deposition of Joseph Novosat, 7/12/23, at 22. Without elaboration, we can only speculate as to whether he meant that the system automatically reminded him to do the check, or it systematically marked it as completed. This distinction bears upon the reliability of the report and its ability to corroborate his testimony that he performed monthly checks. Significantly, he never stated that he kept track of the completed inspections within the TELS system.

Two days after Appellee filed its reply brief, and despite these open questions, the trial court granted summary judgment in favor of Appellee. The court determined, in pertinent part, as follows:

> [T]he record gives evidence that Appellee conducted routine roof checks and made efforts to fully discharge their duty of care to Appellant both before and after the slip and fall. Without notice, and without showing that Appellee somehow failed to take reasonable care to prevent harm to Appellant, a jury could not find for Appellant at trial.

Trial Court Opinion, 12/15/23, at 9-10 (some articles omitted). In reaching this decision, the trial court relied upon Mr. Novosat's deposition testimony, the TELS report appended to Appellee's reply brief, and the nurses' maintenance log. *Id*. at 2-3.

Upon review, we conclude that there was a genuine issue of material fact regarding Appellee's knowledge of a roof defect based upon the allegedly routine roof maintenance performed. The only evidence initially provided regarding the maintenance was Mr. Novosat's testimony, which indicated that he performed routine inspections but kept no records of the inspections,

- 6 -

whether in his own logs or by marking tasks as completed in the TELS software program. Thereafter, and in contradiction to his deposition testimony, Appellee appended a TELS report purportedly demonstrating that monthly routine maintenance checks on the roof had been completed and logged in the software program. This discrepancy highlighted that there was an issue of material fact as to whether routine maintenance inspections were in fact being performed, how often, and to what degree. Moreover, the court's reliance on the nurses' maintenance log in granting summary judgment was misplaced. The log was merely a tool used by nurses to notify the maintenance staff of internal building issues. It had no bearing on whether the roof was routinely inspected.

The trial court improperly resolved a genuine issue of material fact in favor of the moving party by making a factual finding that Mr. Novosat performed monthly routine checks and that those efforts evinced that Appellee had satisfied its duty of care to Appellant. This was an issue of material fact that should be heard and resolved by a jury. *See Fine*, 870 A.2d at 862 (reiterating that "it is not the court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried" (citation omitted)). Accordingly, we reverse the order granting summary judgment.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

P.J.E. Bender joins this Memorandum.

- 7 -

Judge King files a Dissenting Memorandum.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2024