**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTINE A. GALL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER D. GALL | : | |
| | : | |
| Appellant | : | No. 1092 WDA 2021 |

Appeal from the Order Entered August 12, 2021
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD-18-7148

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: MARCH 27, 2023**

Peter D. Gall appeals from the order, titled as a non-jury verdict, that found in favor of Christine A. Gall and against Mr. Gall in the aggregate amount of $118,547.32. In reaching that figure, the lower court determined that Mr. Gall did not disclose $55,000 in assets prior to the consummation of the marriage settlement agreement ("MSA") between the parties. Accordingly, pursuant to the MSA, Ms. Gall was entitled to sixty percent of those non-disclosed assets, and in its ruling, the court also awarded interest, attorney's fees, and court costs/expenses. On appeal, Mr. Gall challenges the applicability of the statute of limitations to this matter, contests Ms. Gall's expert report/testimony, and asserts that Ms. Gall failed to prove, *inter alia*, that Mr. Gall failed to accurately disclose marital assets when the MSA was

_____

[*] Retired Senior Judge assigned to the Superior Court.

executed. Additionally, Ms. Gall has filed a motion to quash this appeal.[1] We deny Ms. Gall's motion as moot and affirm.

In summary,[2] the parties married in 1996, became parents of twin daughters in 1998, separated in 2004, entered into the at-issue MSA in 2005, and divorced that same year. The MSA was incorporated by reference into the corresponding divorce decree[3] and, by its very language, established that both parties had fully disclosed all of their assets:

> Each party asserts that that party has made to the other party a full and complete disclosure of each item of property of every nature owned by each of them, both marital property and non-marital property as defined in the Divorce Code, and the fair market value thereof, and a full and complete disclosure of each debt and/or encumbrance on each item of property, both marital and non-marital as defined in the Divorce Code, and the fair value

---

[1] In her motion to quash, Ms. Gall chiefly avers that Mr. Gall's appeal should be quashed because despite being ordered to do so, he has not posted a *supersedeas* bond in the present appeal. *See* Motion to Quash Appeal, 6/10/22, at 6. While the *supersedeas* issue is more fully detailed in the companion **Gall v. Gall** case at 22 WDA 2022, given our ultimate disposition that Mr. Gall is not entitled to any relief, any determination addressing this motion is necessarily moot. However, despite the motion's mootness, we note that Ms. Gall has not identified any specific authority mandating quashal based on Mr. Gall's inability to post a *supersedeas* bond.

[2] As Mr. Gall's statement of the case includes argumentative components, delving into discovery issues, alleged infirmities with Ms. Gall's complaint, and claims we have been asked to adjudicate in this appeal, **see** Appellant's Brief, at 9-17, that section of his brief is violative of Pennsylvania Rule of Appellate Procedure 2117(a)(4) and (b). **See** Pa.R.A.P. 2117(a)(4), (b) (specifically excluding argument from the statement of the case, requiring a balanced presentation of the case's history and proceedings in narrative form).

[3] There was, however, no merger of the two documents. **See** Divorce Decree, 9/21/05 ("Said [MSA] shall not merge with, but shall survive this Decree and Order.").

thereof. In the event that one party has failed to make full disclosure, the value of the non-disclosed property shall be divided 40% to the party who failed to disclose and 60% to the other party.

Marriage Settlement Agreement, ¶ 8.

In 2010, Mr. Gall petitioned for modification of his child support payments. Correspondingly, Ms. Gall conducted discovery, which led to her becoming aware of certain assets that Mr. Gall did not disclose prior to the MSA's execution.

Armed with this information, Ms. Gall filed a two-count complaint, asserting both a default in the MSA's terms as well as fraud. While Ms. Gall filed her initial complaint in the Allegheny County Court of Common Pleas' Family Division, the case was eventually transferred to the County's Civil Division, due to its complex nature. Following three amendments to the complaint, extensive discovery that ultimately necessitated the appointment of a discovery master, and a failed mediation attempt, the case eventually proceeded to a non-jury trial, which featured several pre-trial motion *in limine* rulings and resulted in the aforementioned award to Ms. Gall. Following the court's verdict against him, Mr. Gall did not file a post-trial motion, but instead filed a timely notice of appeal to this Court and thereafter complied with the dictates of Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Mr. Gall raises four issues[4]:

1. Was Mr. Gall required to file a post-trial motion?

---

[4] For ease of disposition, we have reordered Mr. Gall's fourth claim as his first.

2. Did the trial court err in failing to dismiss both of Ms. Gall's claims as the record establishes that she knew or had reason to know that Mr. Gall did not make a full disclosure of his marital assets at the time when the MSA was entered into and that her 2013 complaint well exceeded the applicable statutes of limitation?

3. Did the trial court err by both allowing Ms. Gall's expert to testify and further admitting into evidence that expert's report?

4. Did the trial court err by finding in favor of Ms. Gall when she failed to prove that Mr. Gall did not accurately disclose marital assets at the time of the MSA's execution or that Mr. Gall fraudulently concealed/transferred marital assets?

Appellant's Brief, at 7-8.

In addressing the post-trial motion matter first, the lower court believes that Mr. Gall's failure to file a post-trial motion should result in quashal as "this dispute … involves claims for default or breach of the [MSA] and fraud." Trial Court Opinion, 11/15/21, at 2. The court bolsters its belief by noting that the complaint, which demanded a judgment of over $25,000, was identified as a complaint in civil action, jurisdiction under Pennsylvania's Divorce Code was never invoked, and the case was handled by Allegheny County's Civil Division for over three years prior to trial. *See id*., at 2-3.

Pennsylvania Rule of Civil Procedure 227.1 "requires parties to file post-trial motions in order to preserve issues for appeal," and "[i]f an issue has not been raised in a post-trial motion, it is waived for appeal purposes." *Board of Supervisors of Willistown Twp. v. Main Line Gardens, Inc*., 155 A.3d 39, 44 (Pa. 2017) (quoting *Lane Enterprises, Inc. v. L.B. Foster Co*., 710 A.2d 54 (Pa. 1998)). However, Rule 1930.2 expressly prohibits "motions for post-

trial relief in *any* domestic relations matter[.]" Pa.R.C.P. 1930.2(a) (emphasis added). In addition, Rule 1920.52 states that "[a] motion for post-trial relief may not be filed to orders with" claims that involve "enforcement of marital property [and/or] martial agreements[.]" Pa.R.C.P. 1920.52(a)(1)-(2); **see also Drissel v. Drissel**, 686 A.2d 1352, 1353 (Pa. Super. 1996) ("As a general rule, post-trial motions may not be filed from a claim involving enforcement of marital agreements.").

While there are some indications that this action is of a civil nature,[5] thus requiring Mr. Gall to have filed a post-trial motion, there are countervailing elements identifying this matter as a domestic relations case.[6] In light of this ambiguity, and in the absence of any clear authority compelling

---

[5] For example, Ms. Gall's initial filing is called a "Complaint in Civil Action," and the matter was ultimately decided by Allegheny County's Civil Division. Moreover, notwithstanding any rights an individual may have under Pennsylvania's Divorce Code, "a party … still preserves his or her right to file a civil or equitable action on [a marital] settlement agreement[.]" **Peck v. Peck**, 707 A.2d 1163, 1164 (Pa. Super. 1998).

[6] Ms. Gall filed her complaint in Allegheny County's Family Division, where it remained for over five years before being transferred due to its complexity. Additionally, this Court has held that, pursuant to section 3105 of the Divorce Code, **see** 23 Pa.C.S.A. § 3105(a), a party can seek enforcement of a marriage settlement agreement in family court. **See Annechino v. Joire**, 946 A.2d 121, 123 (Pa. Super. 2008) (establishing that a party "may use a remedy or sanction set forth in the Divorce Code to enforce the agreement to the same extent as though the agreement had been an order of court") (citation omitted); **id**. (writing that the legislature, through a statutory amendment, intended to encourage "the resolution of economic claims by agreement [rather than] send economic claims relating to divorce over to the civil division as a breach of contract claim[]").

waiver, we decline to find that Mr. Gall has waived his right to review based upon his failure to file a post-trial motion. Accordingly, we proceed to evaluate the substantive components of his appeal.

Mr. Gall contends that Ms. Gall's claims against him are barred by their respective statutes of limitation. Ms. Gall's first count alleges a default of the MSA's terms, i.e., breach of contract, and is therefore subject to a four-year statute of limitations. *See* 42 Pa.C.S.A. § 5525(a)(8). Ms. Gall's second count is fraud, which has a two-year statute of limitations. *See* 42 Pa.C.S.A. § 5524(7).

We emphasize that "[w]hen interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005) (quotation marks and citation omitted). As such, we are bound by the court's credibility determinations. *See id*. at 1257-58. We apply contract principles to our review of marriage settlement agreements, and to the extent the issues present questions of law, our standard of review is *de novo*, and our scope of review is plenary. *See id*., at 1257; *see also Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007). "A question regarding the application of the statute of limitations is a question of law." *See Commonwealth v. Riding*, 68 A.3d 990, 993 (Pa. Super. 2013) (citation omitted).

The lower court determined that the MSA was a "continuing contract,"

as it contained an indefinite obligation, seemingly lasting in perpetuity, for the parties to have fully disclosed both pre-execution marital and non-marital assets. Trial Court Opinion, 11/15/21, at 4 (citation omitted).

Continuing contracts have been defined as follows: "[i]f services are rendered under an agreement which does not fix any certain time for payment or for the termination of the services, the contract will be treated as continuous, and the statute of limitations does not begin to run until the termination of the contractual relationship between the parties." *Thorpe v. Schoenbrun*, 195 A.2d 870, 872 (Pa. Super. 1963) (citation omitted). In *Crispo v. Crispo*, this Court approvingly cited a Court of Common Pleas decision, which indicated that "in the case of continuing contracts … the statute of limitations generally does not run." 909 A.2d 308, 315 (Pa. Super. 2006) (citations omitted) (stating, further, that "the statute of limitations is not an applicable defense" when such a breach is claimed). Based on these precepts, if the present MSA is, in fact, a continuing contract, Mr. Gall's statute of limitations assertions would be, according to the lower court, "inapplicable." Trial Court Opinion, 11/15/21, at 4 (citation omitted).

A continuing contract has been found when a husband did not pay the mortgage, taxes, and insurance on a marital residence, pursuant to a marriage settlement agreement. *See Miller v. Miller*, 983 A.2d 736, 742-43 (Pa. Super. 2009). In particular, the agreement in *Miller* did not contain deadlines for those debts to be paid and did not identify specific amounts that were

owed. *See id*., at 743. Resultantly, "the statute of limitations had not begun to run on [h]usband's continuing payment obligations." *Id*. In *Crispo*, this Court found that a property settlement agreement containing a schedule of payments and marital debts was a continuing contract as there were no specific dates assigned to when those payments would start or conclude. *See* 909 A.2d at 313-15.

Conversely, the marriage settlement agreement in *K.A.R. v. T.G.L.* specified that the wife would receive a percentage of husband's named business "if and when it would be sold". 107 A.3d 770, 777 (Pa. Super. 2014). That "if and when" language, this Court concluded, "provided that the date that [h]usband sold the [b]usiness['] stock … was the specific date when [h]usband became obligated to make payment to [w]ife for the [b]usiness sale. Moreover, the parties' agreement identifies the amount owed to [w]ife, in terms of percentages of net proceeds received by [h]usband." *Id*., at 778. Accordingly, the contract was not continuing because its constituent components were known or would be specifically defined at some point in the future.

Based on existing case law, it is unclear whether the parties' post-execution duty to disclose pre-execution assets constitutes a continuing contract: the MSA obligates, without any time limitation, the parties to identify previously undisclosed pre-execution assets to be then formulaically divided, but that duty, at least facially, appears to be distinct from *Miller* and *Crispo*,

which both featured ongoing, yet undefined, payment obligations. With all of that said, Mr. Gall does not substantively analyze or refute the court's continuing contract finding. However, because we find that the lower court did not abuse its discretion in its application, in the alternative, of the discovery rule, discussed *infra*, we need not conclusively make this determination.

Under normal circumstances:

The Judicial Code provides in pertinent part that limitations periods are computed from the time the cause of action accrued. 42 Pa.C.S. § 5502(a). In Pennsylvania, a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion. Thus, we have stated that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises. ***Pocono International Raceway, Inc. v. Pocono Produce, Inc.***, 503 Pa. 80, 468 A.2d 468, 471 (1983). Generally speaking, in a suit to recover damages for personal injuries, this right arises when the injury is inflicted*. **See Ayers v. Morgan***, 154 A.2d 788, 791 (1959). Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute. ***Nesbitt v. Erie Coach Co.***, 204 A.2d 473, 475 (1964). ***Pocono International***, 468 A.2d at 471. Once a cause of action has accrued and the prescribed statutory period has run, an injured party is barred from bringing his cause of action. ***Id***.

***Fine v. Checcio***, 870 A.2d 850, 857 (Pa. 2005) (some citations and parallel citations omitted). However, as a way to toll the statute of limitations,

when a court is presented with the assertion of the discovery rule's application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply

as a matter of law.

*Id*., at 858-59 (excluding time from the statute of limitations calculation where an injured party is reasonably unaware of the injury).

Here, the court, after personally observing Ms. Gall, determined that she was a credible witness. *See* Trial Court Opinion, 11/15/21, at 3. "[Ms. Gall] was suspicious that [Mr. Gall] was hiding money, but in marriages where one spouse is kept in the dark about investments, having such suspicion is common. Ms. Gall testified credibly it was not until around 2011 when she saw Mr. Gall cash[] a $100,000 treasury bond reissued in 2005 that Ms. Gall had reason to know of Mr. Gall's nondisclosure." *Id*. (record citation omitted). "Before then, Ms. Gall did not know or have reason to know of the nondisclosure because she knew nothing about the margin trading, option trading and/or short sales that Mr. Gall did in the stock market." *Id*. (record citation omitted). The court also noted that Mr. Gall, throughout the prior divorce litigation, made it difficult for Ms. Gall to ascertain what marital assets were available. *See id*., at 3-4. In conclusion, the court found that Ms. Gall "exercised reasonable diligence to determine if she was injured and determined she was injured no earlier than 2011 during the discovery process following Mr. Gall's request for a child support reduction." *Id*., at 4-5 (record citation omitted). Separately, the court found that Mr. Gall fraudulently concealed marital property, which further militated a finding that Ms. Gall only became actionably aware of Mr. Gall's nondisclosure of pre-execution assets

in 2011. *See id*., at 5; *see also Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 291 (Pa. Super. 1997) ("[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff[] justifiably relied.").

Nevertheless, Mr. Gall avers that Ms. Gall discovered his alleged nondisclosure of assets well beyond any applicable statute of limitations. In essence, Mr. Gall argues that, based on the evidence of record, Ms. Gall reasonably knew or should have known about Mr. Gall's undisclosed assets closer in time to the execution of the MSA. *See* Appellant's Brief, at 20-21 (citing *Fine*, 870 A.2d at 861). Mr. Gall then goes on to cite Ms. Gall's testimony, wherein she indicated that, contemporaneous with the MSA's execution, she felt that Mr. Gall had stocks and money that he did not disclose, knew that he engaged in stock trading, and had access to the parties' tax returns and account statements. *See id.*, at 22-23 (record citations omitted). Mr. Gall further writes that Ms. Gall had, at some point prior to the MSA's execution, access to his diary, wherein there was a passage that illuminated the fact that he wanted to protect a $500,000 investment account known to Ms. Gall. *See id*., at 23 (remarking that while Ms. Gall knew about that account, she did not know how much was in it) (record citation omitted). In summary, Mr. Gall believes that she did not uncover any post-execution evidence of his alleged concealment or nondisclosure and that any asset-

related information she is now using against him would have, or should have, been known to her at a much earlier point in time. **See id**., at 24.

"[T]he question as to when a party's injury and its cause were discovered or discoverable is for the [factfinder]." **Fine**, 870 A.2d at 859; **see also Hollock v. Erie Ins. Exchange**, 842 A.2d 409, 414 (Pa. Super. 2004) (citation omitted) (prohibiting an appellate court from substituting its judgment for that of the factfinder, as it is the exclusive province of the factfinder to assess witness credibility and evidence). While there might be indicia that Ms. Gall had some level of awareness as to potential assets that Mr. Gall had not disclosed prior to the MSA's execution, reasonable minds could differ as to when Ms. Gall, in fact, knew she had become injured to any degree of certainty, especially in light of the much more recent discovery conducted related to an attempted modification of Mr. Gall's child support payments. This reasonable disagreement puts this case squarely within the domain of the discovery rule.

Looking to her testimony, Ms. Gall acknowledged, pre-MSA, that she copied, for her own recordkeeping, at least some of Mr. Gall's diary as well as a few of Mr. Gall's financial records. **See** N.T., 7/27/21, at 56-57. Ms. Gall also admitted that she knew Mr. Gall's stock trading led to a margin call. **See id**., at 57-58. Additionally, Ms. Gall did not believe Mr. Gall provided an accurate list of his inventory before the MSA had been executed. **See id**., at 60, 68 ("[Ms. Gall felt there was stocks and money and everything that [Mr. Gall] did

not disclose."). However, Ms. Gall also stated that, while she believed Mr. Gall did not make a full disclosure of his assets, she was "not on the stocks" and further indicated that she "was not a broker and [she] knew nothing about margins[.]" *Id*., at 67-68. Moreover, "[t]here were accounts that [Mr. Gall] had in his own name that he had that [Ms. Gall was not] privy to[.]" *Id*., at 69. Ms. Gall also conveyed that her former attorney had "asked for information from [Mr. Gall about the potential existence of other accounts] and he didn't give it." *Id*.

Ms. Gall emphasized that her awareness of Mr. Gall's nondisclosed assets, described by her as a "red flag," came when discovery was performed when Mr. Gall "wanted to lower [her] child support." *Id*., at 98. At that juncture, she asked for "stocks and bank accounts, and things didn't add up." *Id*. Specifically, Ms. Gall asked Mr. Gall "to go get some paperwork from the IRS. And [she] compared it to his 2008 tax return, and he had cashed in [a] $100,000 Treasury bond that was reissued in 2005. That was a red flag. It said it was … reissued. That meant it was issued when we were married and he cashed it in." *Id.*, at 100. This discovery caused Ms. Gall to "hire[] the [financial expert] that [she] did to explain it all to [her]." *Id*., at 101. Ms. Gall then remarked that she does not "understand all the things with his trading and all the things that he does." *Id*.

While Mr. Gall has shown that Ms. Gall had at least an inkling, pre-execution, that he had not been forthright in accounting for all of his assets,

- 13 -

Mr. Gall has failed to show that the court abused its discretion in determining that Ms. Gall's awareness, for discovery rule purposes, came at or around the time she conducted discovery in the child support matter. Mr. Gall cites to **K.A.R.**, *supra*, and highlights that an email in that case, sent from the wife to the husband, provided objective evidence of the "latest date for application of the discovery rule, as evidenced by her belief at the time that she had suffered harm[.]" Appellant's Brief, at 27 (citation omitted). A review of that email establishes that the wife, at that specific moment in time, had objective knowledge of husband's business deal and believed that she stood to benefit pursuant to the terms of the parties' marriage settlement agreement. **See K.A.R.**, 107 A.3d at 780 (finding that wife ran afoul of the statute of limitations in filing a late enforcement of marriage settlement agreement petition).

Here, while Ms. Gall clearly had some pre-execution idea that Mr. Gall failed to completely report his marital assets, the court determined that Ms. Gall had no objective basis to know that he, in fact, did until 2011, when she received the tranche of Mr. Gall's financial information in the child support matter. Because the date she learned this information was within four years of the date upon which Ms. Gall filed her breach of contract claim in March 2013, that claim would then be timely under the discovery rule. 42 Pa.C.S.A. § 5525(a)(8) (four-year statute of limitation applies to breach of contract cause of action). While Ms. Gall did not state in her testimony when in 2011 she became aware of her ex-husband's previously undisclosed assets and her

fraud claim only has a two-year statute of limitations, 42 Pa.C.S.A. § 5524(7), we need not address the ambiguity in the application of the discovery rule to the fraud claim because the trial court held that its verdict was based equally on the breach of contract and fraud claims. *See* Trial Court Opinion, 11/15/21, at 7.

As the lower court was the factfinder, tasked with determining when Ms. Gall knew or should have known she had been injured, and with Mr. Gall having failed to illuminate any authority showing that mere suspicion of a lack of forthrightness is enough to defeat the discovery rule, we find no abuse of discretion in the court's determination that Ms. Gall was not time-barred from pursuing her suit to enforce the terms of the MSA.

Mr. Gall next asserts that Ms. Gall's expert, Donna Cheswick, should not have been allowed to testify. Mr. Gall believes that Ms. Cheswick, identified as a certified divorce financial analyst, "should have been precluded from testifying based on her lack of qualifications and/or expertise as her curriculum vitae confirms her lack of qualifications and/or expertise." Appellant's Brief, at 30. In addition, Mr. Gall argues that Ms. Cheswick failed to set forth an opinion predicated on "specialized knowledge" and "recognized methodology" in violation of Pennsylvania Rule of Evidence 702. *Id.* In blunderbuss-like fashion, Mr. Gall utilizes this section to: (1) challenge whether it was appropriate for Ms. Cheswick to opine as to Mr. Gall's credibility; (2) highlight that Ms. Cheswick's opinion was based on conjuncture; (3) emphasize the

unscientific analysis/methodology underpinning her conclusions; and (4) note that Ms. Cheswick did not identify any marital asset that Mr. Gall failed to disclose. **See** Appellant's Brief, 30-35.

Although it is hard to parse and compartmentalize precisely what Mr. Gall is arguing, we first note that he did not present an expert himself. Secondly, although Mr. Gall claims that Ms. Cheswick's opinion "is nothing more than an application of circular reasoning," Appellant's Brief, at 33, it is unclear what he means.

The lower court cogently summarized Mr. Gall's allegations and adequately refuted them. We see no salient basis to depart from its conclusions, and we therefore adopt them as our own:

> Mr. Gall first argues that Ms. Cheswick impermissibly opines as to his credibility. However, [the lower court] sustained the only objection on this basis made during the trial and struck the related portion of Ms. Cheswick's report. Mr. Gall next argues Ms. Cheswick's opinion is based on possibilities and/or conjecture. But this is incorrect since she testified that she reached her "conclusion with a reasonable degree of professional certainty." Mr. Gall next argues Ms. Cheswick's opinion is not based on expert analysis and/or methodology. While Pennsylvania Rule of Evidence 702(c) mandates that "the expert's methodology is generally accepted in the relevant field," guidance on the subject properly may come from "experts retained by the parties in the case[.]" **Walsh v. BASF Corporation**, 234 A.3d 446, 458 (Pa. 2020). In any event, trial judges should not question an expert's methodology absent a showing that the expert's opinion is based on novel scientific evidence. **See Commonwealth v. Bonnett**, 239 A.3d 1096, 1105 (Pa. Super. 2020). Mr. Gall, however, presented no evidence that Ms. Cheswick's opinion is based on novel scientific evidence. Mr. Gall's final argument concerning Ms. Cheswick's expert opinion testimony and report is that she fails to identify any marital asset that he failed to disclose. However, Ms. Cheswick identifies a U.S. Treasury note that Mr. Gall failed to

disclose. Even if this had not been identified, [the lower court is] unaware of any case law, statute, rule or other authority that requires identification of a specific asset in order to opine that money was hidden. Such a requirement would be nonsensical as it would provide a reward for successfully destroying assets, consuming them or hiding them somewhere they cannot be found. There was abundant circumstantial evidence that Mr. Gall failed to disclose all of his money, and it would be inappropriate to reward him for putting it in a place where Ms. Gall could not find it.

Trial Court Opinion, 11/15/21, at 5-6 (record citations omitted) (cleaned up).

Germane to Mr. Gall's concerns over the expert's conclusions and methodology, we note that "trial courts may not question the merits of the expert's scientific theories, techniques or conclusions, and it is no part of the trial court's function to assess whether it considers those theories, techniques and/or conclusions to be accurate or reliable based upon the available facts and data." **Walsh**, 234 A.3d at 458. The factfinder, however, may "attempt to determine whether it agrees with the expert's application of those methodologies or whether the expert's conclusions have sufficient factual support." **Id**.

Mr. Gall does not acknowledge that the court sustained an objection to the expert's testimony, wherein she impermissibly opined as to Mr. Gall's credibility. **See** N.T., 7/27/21, at 148. Furthermore, Mr. Gall does not reference the fact that the court, in effect, struck that corresponding portion of Ms. Cheswick's report. Additionally, Mr. Gall does not discuss the **Frye** test in his brief, which is the standard that governs the ability for expert qualification and the admission of scientific evidence. **See Frye v. United**

*States*, 293 F. 1013 (D.C. Cir. 1923); *see also Commonwealth v. Bonnett*, 239 A.3d 1096, 1101 n.4 (Pa. Super. 2020) ("Under *Frye*, novel scientific evidence must be generally accepted in the relevant scientific community before it will be admitted."); Pa.R.E. 702.

Other than arguing that Ms. Cheswick's "opinion does not constitute proof of anything," Appellant's Brief, at 32, the actual crux of Mr. Gall's contention is that the expert opinion "offers nothing more than a 'cherry picked' selection of supposed deposits over two to four years after the parties separated and cursory conclusions." *Id.*, at 35 (cleaned up).

To the extent that Mr. Gall's statement carries any amount of accuracy, Mr. Gall has simply not demonstrated any clear reason to reverse as it relates to alleged infirmities associated with Ms. Gall's expert. Other than bald allegations, in the absence of, *inter alia*, any kind of expert report proffered by himself, Mr. Gall has not shown that Ms. Cheswick utilized an unscientific or novel scientific theory, and to the extent that Mr. Gall contests the expert's application of her methodologies to the events presently in question, it was for the factfinder to determine whether her conclusions have factual support. In seeing no obvious merit to Mr. Gall's challenges against Ms. Gall's expert, Mr. Gall is due no relief.

In his final issue, Mr. Gall contends that the lower court's verdict was not supported by competent evidence. Specifically, Ms. Gall "failed to offer competent evidence of any undisclosed asset at the time of the execution of

[the MSA]." Appellant's Brief, at 36. Mr. Gall then highlights Ms. Cheswick's testimony, wherein she agreed that it was possible Mr. Gall could have funded an account in question via non-marital/post-execution sources of money. *See id.*, at 36-37. Accordingly, Mr. Gall asserts that there was no "clear, precise and indubitable" evidence that Mr. Gall's undisclosed assets were marital. *See id.*, at 40.

Our review in a non-jury case is limited to "whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law." ***Bonenberger v. Nationwide Mut. Ins. Co.***, 791 A.2d 378, 380 (Pa. Super. 2002). The corresponding test we apply is "not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***Bergman v. United Servs. Auto. Ass'n***, 742 A.2d 1101, 1104 (Pa. Super. 1999).

It appears that Mr. Gall is primarily challenging whether Ms. Gall proved that he committed fraud. *See* Appellant's Brief, at 36 ("Fraud must be proven by clear, precise and indubitable evidence.") (citation omitted), 40 (arguing that "there is no 'clear, precise and indubitable' evidence to support the [t]rial [c]ourt's decision"). However, as noted above, the trial court based its verdict on both the fraud and breach of contract claims. *See* Trial Court Opinion, 11/15/21, at 7 ("Even if Mr. Gall were correct [that Ms. Gall did not prove her

- 19 -

fraud claim], [the court's] verdict was also based on Ms. Gall's breach of contract claim."). Therefore, we need not address the sufficiency of the evidence as to the fraud claim.

To the extent Mr. Gall challenges the evidentiary support for the trial court's ruling that he breached the MSA, we find no merit to this argument. In its opinion, the lower court found that Ms. Cheswick proved Mr. Gall's nondisclosure of marital assets in the MSA based upon her testimony "that the investment account disclosed in the [MSA] was valued at $45,555 in May of 2004 and fell to $19,720 shortly after the [execution of the MSA], primarily due to agreed payments to Ms. Gall." *Id.*, at 6 (record citations omitted). Ms. Cheswick then noted that Mr. Gall's post-execution "income and expenses … did not provide any funding sources for the new account opened in May of 2006 with a value of $80,000." *Id*. (record citation omitted). The court concluded that "[t]his testimony and other credible circumstantial evidence [was] proof that Mr. Gall hid around $60,000 or more from Ms. Gall[.]" *Id*., at 6-7.

As Ms. Gall highlights, Ms. Cheswick conveyed that the hypothetical questions on cross-examination that related to possible alternative funding explanations were in the context of Mr. Gall having not "provided" the relevant financial information in the first place to establish these possibilities. N.T., 7/21/21, at 181. Ms. Cheswick also stated that, in reaching her conclusions, she was "just looking at information that [she] kn[e]w and information that

was disclosed." *Id*., at 182. Notwithstanding what appears to be yet another attack on Ms. Gall's expert, Mr. Gall has not shown that the court's finding in favor of Ms. Gall on her breach of contract claim was not supported by a legally sufficient amount of evidence.

In finding no basis to reverse the lower court's non-jury verdict, we affirm the award in favor of Ms. Gall in the amount of $118,547.32.

Order affirmed. Motion to quash denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2023